John E. GIBBONS, on his own behalf and on behalf of all persons similarly situated, Plaintiff,

v.

INTERBANK FUNDING GROUP, et al., Defendants.

No. C–00–3888 PJH.

United States District Court, N.D. California.

April 23, 2002.

Robert A. Goldstein, Jeff Pollack, Oakland, CA, for plaintiff.

Paul L. Warner, Gregory S. Cavallo, Jeffer, Mangels, Butler & Marmaro, San Francisco, CA, for defendants.

## ORDER[1]

HAMILTON, District Judge.

Defendant PSB's motion for summary judgment and plaintiff's motion for class certification came on for hearing on April 3, 2002, before this court, the Honorable Phyllis J. Hamilton presiding. Defendant PSB appeared by its counsel Gregory S. Cavallo, and plaintiff appeared by his counsel Jeff Pollack. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, the court hereby rules as follows for the reasons stated at the hearing.

## BACKGROUND

Plaintiff brings this suit under the Truth In Lending Act ("TILA"), alleging that he was presented with loan documents that did not inform him of his right to rescind as required by TILA, and seeking to represent a class of similarly situated class members.

On January 9, 1998, plaintiff and his wife signed documents to obtain a loan from defendant Interbank Funding Group ("Interbank")[2] in the amount of $40,000. Complaint, ¶ 9. According to the complaint, the loan proceeds were to be used "primarily for personal, family and household purposes" and the loan was secured by a second deed of trust on plaintiff's home. *Id.* Plaintiff mailed the documents referenced above to Interbank the same day that he signed them (January 9). At some point, the loan was consummated, plaintiff received the funds[3], and began making payments on the loan. Plaintiff never attempted to rescind the loan.

One of the documents plaintiff received on January 9 was a Notice of Right to Cancel form, which advised plaintiff of his rescission rights under TILA. The form that plaintiff received was identical to model form H–9, promulgated pursuant to TILA by the Federal Reserve Board. Form H–9 is meant for consumers who are entering into loan trans-actions with the creditor who financed a previous loan secured by the borrower's home. Since Interbank was not the lender who made the first loan secured by plaintiff's home, defendant PSB concedes that H–9 was not the correct form. Plaintiff contends that he should have received a notice that included the information found in model form H–8, which is intended for loans from a lender who does not already hold a security interest in the borrower's home. The H–9 form received by plaintiff states, in relevant part:

> You are entering into a new transaction to increase the amount of credit previously provided to you. We acquired a mortgage or security interest on your home under the original transaction and will also acquire a mortgage or security interest on your home in the new transaction. You have a legal right under Federal law to cancel the *new* transaction, without cost, within three business days from whichever of the following events occurs last:
>
> 1) the date of the new transaction, which is *1/9/98;*[4] or
>
> 2) the date you received your Truth in Lending disclosures; or
>
> 3) the date you received this notice of your right to cancel.

If you cancel the *new* transaction, your cancellation will only apply to the increase in the amount of credit. It will not apply to the amount you presently owe or the mortgage or security interest we have on your home to secure that presently owed amount. If you cancel, *the mortgage or security interest solely as it applies to the increased amount is also cancelled,* but we will retain a mortgage or security interest in your home to secure the amount you presently owe, which will remain repayable according to the terms of your *existing* credit transaction.

---

1. This order is not appropriate for citation pursuant to Civil L.R. 7–13.

2. At some point, Interbank transferred its interest in the loan to defendant PSB Lending Corp. ("PSB"). On February 20, 2002, the clerk entered a default against Interbank. Plaintiff asserts that Interbank is "out of business."

3. Gibbons received a check "on or about February the 9th."

4. This date was hand printed on to the right-to-cancel form.

Plaintiff's H–9 form further provided that if plaintiff wished to rescind by mail, he had to mail the notice no later than midnight of January 13, 1998 (three business days after January 9). Plaintiff received two copies of this form, and he and his wife signed one of them to acknowledge receipt and sent it back to Interbank.[5]

Also among the disclosure documents received by plaintiff on January 9 was a form entitled "Acknowledgment." This form, which included a signature line for the borrower, confirmed the borrower's understanding that the requested loan was "still conditioned" upon the review and investigation of the information provided by the borrower, including credit history. The acknowledgment form further states:

> Applicant(s) acknowledge that by receiving the loan application and agreeing to review all such subjective and objective factors and making a determination as to whether or not it will make a loan to applicant(s), that Lender is not bound to make a loan to the applicant(s), that Lender is not bound to make any loan, nor has it agreed to do so. Until such time, applicants' status is that of an individual seeking a loan and the receipt of the application is not an obligation upon Lender to make the applicant(s) a loan. I/We have read the above acknowledgment, and understand and agree that until such time as we are notified that our loan application has been reviewed, approved, and accepted, Lender is not obligated to make us a loan.

Plaintiff's complaint alleges two defects in the Notice of Right to Cancel. First, plaintiff argues that the H–9 form included "misleading and objectively false information about the nature of plaintiff's right to rescind" and that he should have received the H–8 form instead.

The second alleged defect is that the date of the rescission deadline written on the Notice (January 13) is incorrect. This contention is based on the argument that the language in the acknowledgment form quoted above establishes that as of January 9, there was no agreement to make a loan, and that the rescission period could not begin until there was such an agreement. Thus, whenever the rescission period began, it was at some point later than January 9.

## DISCUSSION

### A. PSB's Motion for Summary Judgment.

■ PSB moves for summary judgment on the grounds that the rescission notice given to plaintiff satisfied TILA as a matter of law. As will be seen, PSB fails to make that showing.

#### 1. Legal Standard.

Summary judgment is appropriate when there is no genuine issue as to material facts and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. Material facts are those that might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* The court may not weigh the evidence, and is required to view the evidence in the light most favorable to the nonmoving party. *Id.*

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court

---

5. The complaint alleges that plaintiff only received one copy of the rescission notice, in contravention of TILA. This allegation is completely baseless. An unsigned copy of the notice is attached to the complaint. As noted, plaintiff signed the copy that he returned to Interbank. The dates on the forms are handwritten and the differences in the handwriting make it clear that plaintiff received two copies of the notice.

that there is an absence of evidence to support the nonmoving party's case. *Id.* If the moving party meets its initial burden, the opposing party must then set forth specific facts showing that there is some genuine issue for trial in order to defeat the motion. *Anderson*, 477 U.S. at 250, 106 S.Ct. 2505.

■ Regardless of whether plaintiff or defendant is the moving party, each party must "establish the existence of the elements essential to [its] case, and on which [it] will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.

### 2. TILA Regulations.

■ TILA was enacted to "avoid the uninformed use of credit," and to "assure the meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him." 15 U.S.C. § 1601. TILA is liberally construed, and even technical or minor violations impose liability on the creditor. *Jackson v. Grant*, 890 F.2d 118, 120 (9th Cir. 1989). TILA provides that in credit transactions in which a security interest in a borrower's residence is retained,

> the [consumer] shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later.

15 U.S.C. § 1635(a). The right of rescission is further explained in Regulation Z, promulgated by the Federal Reserve Board:

> The consumer may exercise the right to rescind until midnight of the third business day following consummation, delivery of the notice [of the right to rescind], or delivery of all material disclosures, whichever occurs last. If the required notice or material disclosures are not delivered, the

right to rescind shall expire 3 years after consummation.

12 C.F.R. § 226.23(a)(3).

### 3. Sufficiency of the form.

■ PSB argues that it is entitled to summary judgment because (a) form H–9 is "substantially similar" to form H–8, and (b) form H–9 actually provides more useful information to plaintiff under these circumstances (borrower is taking out a second mortgage, albeit from a different lender). The court disagrees.

First, TILA is strictly construed in the Ninth Circuit:

> Technical or minor violations of TILA or Reg Z, as well as major violations, impose liability on the creditor and entitle the borrower to rescind. To insure that the consumer is protected ... [TILA and Reg Z must] be absolutely complied with and strictly enforced.

*Semar v. Platte Valley Federal Sav. & Loan Ass'n*, 791 F.2d 699, 704 (9th Cir.1986) (citation omitted).

■ Second, the language in form H–9 differs from form H–8 in crucial respects that, at least insofar as a borrower in Mr. Gibbon's position is concerned, renders the form misleading. The first sentence states that the loan will "increase the amount of credit previously provided to you." Plaintiff's loan was an entirely new grant of credit, not an increase of any previously provided loan.[6] The next sentence states that Interbank ("we") acquired an interest in the borrower's home under an original loan and will now "also" acquire an interest in the home under the new loan. Thus, a borrower reading the notice may conclude that somehow Interbank not only acquired an interest under the present loan, but also was able to assume the security interest relating to the first loan. The notice goes on to state that if the borrower cancels this new transaction, Interbank will still retain the security interest it has pursuant to the first loan.

---

**6.** Plaintiff argues that this sentence is misleading because plaintiff used the loan to pay off credit card debt, and thus the sentence could be construed to refer to the "previous credit" extended on those cards.

This last point is especially important. A borrower may have less incentive to rescind if he believes that, following rescission, he will still owe something under the loan and the lender will still retain a security interest. Thus, it cannot be said that the H–9 form received by plaintiff "clearly and conspicuously" disclosed plaintiff's rescission rights as required by TILA. 15 U.S.C. § 1635(a).

This conclusion is consistent with that reached by the Third Circuit in *In re Porter*, 961 F.2d 1066, 1070 (3rd Cir.1992). In *Porter*, the borrower was mistakenly sent a H–8 form instead of H–9 (the exact opposite of what occurred here). Plaintiff argued that the H–8 form, given in connection with a loan that was arguably a refinancing, was "confusing" and the Third Circuit agreed. The court started with the premise that under the regulations, the notice must "clearly and conspicuously disclose ... (iv) The effects of rescission, as described in paragraph (d) of this section." 12 C.F.R. § 226.23(b). The court noted that "the H–9 crucially differs from the H–8 in that it spells out that the borrower has the right to cancel the new transaction to the extent of the increase in the amount of credit, but that such cancellation will not affect the amount that the borrower already owes or the lender's existing security interest." *Porter*, 961 F.2d at 1074. The H–8 form, merely states that the entire loan will be rescinded and the entire security interest will be cancelled. Thus, plaintiff argued that she could reasonably interpret the notice "as allowing Porter to rescind the whole new security interest, covering both old and new money." *Id.* at 1077. Significantly, such an interpretation would mean that "[i]f the transaction were rescinded, the whole new security interest would be rescinded, and Porter would have to return both the old and the new money." *Id.* The court noted that a borrower is not necessarily better off if she is required to return the entire amount of the loan (both loans together) and that "[m]any borrowers seek refinancings involving additional money precisely because they are cash-strapped." *Id.*

Thus, despite noting that any violation was likely unintentional and that plaintiff "like most borrowers, may never have read or been confused by Consumer's cancellation notice," the court held "that a lender violates TILA by providing the H–8 notice when the borrower's right to rescind is limited by the 'refinancing' exception of 15 U.S.C. § 1635(e)(2)." *Id.* at 1077–78.

The same reasoning applies here. As in *Porter*, the notice in this case could have dissuaded a borrower from rescinding. Because the Ninth Circuit has made it clear that even technical or minor violations can result in the right to rescission, PSB has not established that it is entitled to summary judgment on this issue.

4. When the loan "consummated."

■ Next, PSB moves for summary judgment on the second alleged defect in the rescission notice. As noted above, plaintiff claims that language in the acknowledgment form signed by the borrowers, which explicitly states that Interbank has not yet committed to making a loan, prevented a contract from being formed between the parties.

PSB argues that the loan was consummated on January 9, 1998, when plaintiff signed the papers. PSB states that under TILA regulations, "consummation occurs when the consumer becomes contractually obligated." 12 C.F.R. § 226.2(a)(13). Thus, PSB argues, the date that Interbank committed to the loan is irrelevant. PSB points out that Gibbons himself testified at deposition that "on January 9th I thought we had completed the entire loan process."

Plaintiff's argument focuses on the fact that through the statements in the acknowledgment form, Interbank has made it clear that it is not agreeing to provide a loan.[7] However, as noted by the court at the hearing on this motion, plaintiff received other disclosure documents that are relevant to this analysis. One is a document entitled "Itemization Of Amount Financed." This

7. Plaintiff relies on *Jackson v. Grant*, 890 F.2d 118 (9th Cir.1989) to argue that the absence of a guarantee of a loan is sufficient to find no consummation. That is incorrect. The Jackson court plainly stated, "We express no opinion as to whether a consumer's right of action may attach when only the consumer is obligated." *Jackson*, 890 F.2d at 122, n. 7.

document includes the following statement directly above the borrower's signature line: "I/WE UNDERSTAND ... THERE IS NO OBLIGATION FOR ME/US TO ACCEPT THIS LOAN UPON THE DELIVERY OR SIGNING OF THESE DISCLOSURES." Similarly, plaintiff also received a document entitled "Federal Truth–In–Lending Disclosure Statement." Directly above the signature line, the form states: "I/We Understand ... there is no obligation to me/us to accept this loan upon delivery or signing of this disclosure."

As noted earlier, under Regulation Z, "consummation" means "the time that a consumer becomes contractually obligated on a credit transaction." 12 C.F.R. § 226.2(a)(13). The forms discussed above indicate that plaintiff was not "contractually obligated on a credit transaction." To the contrary, these forms expressly state that plaintiff was not obligated to accept the loan.

After the hearing, the parties submitted warring declarations seeking to establish whether or not the language quoted above is standard in TILA forms. For the purposes of resolving the motion before it, the court regards that point as irrelevant. Standard or not, the forms state that even if Interbank agrees to fund the loan, plaintiff has no obligation to accept it. At the very least it is clear that PSB is not entitled to summary judgment on the issue of whether the transaction was consummated on January 9.

### 5. Remaining Arguments.

PSB makes two remaining arguments in support of its motion for summary judgment, both of which can be dispatched in short order. First, PSB argues that its use of an official form promulgated by the Federal Reserve Board shields it from liability. *See* 15 U.S.C. § 16635(h). Given that this defense only applies if the lender "provided the obligor the appropriate form of written notice," and that Interbank provided the wrong form, this argument fails.

■ Next, PSB moves for partial summary judgment against any claim for statutory damages under 15 U.S.C § 1640(a). This

motion is based on the argument that any such action must be brought within one year from the date of the occurrence of the violation. 15 U.S.C. § 1640(e). Because PSB argues the loan was consummated on January 9, 1998, it argues that any action for damages should have been brought by January 9, 1999 (the original complaint was filed on October 20, 2000). However, plaintiff responds (and PSB does not refute) that the basis for damages in this case is the failure to recognize plaintiff's right to rescind within 20 days of receipt of the notice to rescind (sent on December 19, 2000). This is clearly spelled out in the complaint. FAC, ¶ 30. This argument also fails.

In accordance with the foregoing, PSB's motion for summary judgment is DENIED in its entirety.

### B. Plaintiff's Motion for Class Certification.

Plaintiff describes the proposed class as persons who "obtained loans from INTERBANK primarily for personal, family and household purposes secured by their principal dwellings located in the State of California which loans were not paid" when the original complaint was filed and either (a) received an acknowledgment form "substantially similar" to that received by plaintiff or (b) did not receive a written notice containing the information found in form H–8 even though they were not refinancing an Interbank loan. FAC, ¶ 13. Plaintiff also seeks to represent a subclass of individuals "whose loans were assigned by INTERBANK to PSB." FAC, ¶ 14. Regarding cutoff dates, plaintiff proposes that the class consist of those who "during the three years prior to the filing of the original Complaint in this case (i.e., October 20, 2000) or during the pendency of this lawsuit," obtained qualifying loans. FAC, ¶ 13.

Plaintiff describes the class relief sought as follows: (a) a declaration that each general class member has a continuing right to rescind their loan under TILA as to Interbank; and (b) that each member of the subclass has a continuing right to rescind as to PSB.[8]

---

8. This requested relief is not available on a "con-    tinuing" basis. If the rescission notice is im-

#### 1. Legal Standard.

The prerequisites for a federal class action are set forth in Federal Rule of Civil Procedure 23. The court's certification analysis consists of two steps. The first is determining whether the proposed class satisfies the four factors set out in Rule 23(a): (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. Fed.R.Civ.P. 23(a). Numerosity is satisfied where "the class is so large that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). Commonality is found "if there are questions of fact and law which are common to the class." Fed.R.Civ.P. 23(a)(2). Typicality is satisfied where "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R.Civ.P. 23(a)(3). Finally, to satisfy adequacy, the court must be able to find that the persons representing the class will "fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4).

In the second step of the Rule 23(b)(2) certification analysis, the Court must determine whether the "party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed.R.Civ.P. 23(b)(2). The burden is on the party seeking certification (Gibbons) to establish a prima facie showing of each of the Rule 23 prerequisites.

#### 2. Application.

Other courts have concluded that class relief is not appropriate in cases where the relief sought is actual rescission. *See James v. Home Const. Co. of Mobile, Inc.*, 621 F.2d 727, 730–31 (5th Cir.1980); *Nelson v. United Credit Plan, Inc.*, 77 F.R.D. 54, 58 (E.D.La. 1978). Indeed, plaintiff concedes that such relief would not be appropriate on a class-wide basis. Reply Brief at 10 ("complete rescission ... would clearly be inconsistent with U.S.C. section 1535(b) which, among other things, provides that before actual re-

scission of a loan occurs, the borrower must elect rescission."). However, plaintiff contends that rescission is appropriate here because he is not seeking actual rescission, but rather only a declaration that class members may seek rescission if they so desire. There appears to be a split of authority among district courts regarding whether this is permissible. *Compare Williams v. Empire Funding Corp.*, 183 F.R.D. 428 (E.D.Pa. 1998), *with Jefferson v. Security Pacific Financial Services, Inc.*, 161 F.R.D. 63 (N.D.Ill.1995).

The distinction drawn in the relief sought by plaintiff—a declaration authorizing rescission rather than an order enforcing rescission rights—seems to be one of form more than substance. It is not at all clear why, if class-wide rescission is inappropriate, a declaration authorizing the same thing is not also inappropriate.

As recognized in the decisions cited by the parties, § 1635(b) provides a personal remedy, *See James*, 621 F.2d at 730; *Jefferson*, 161 F.R.D. at 69. Under TILA, a party seeking rescission must notify the lender of his/her intent to rescind. *See* 15 U.S.C. § 1635(b). The lender then has twenty days to respond to that demand. *Id.* Thus, TILA contemplates that "individuals must choose to assert the right to rescind, on an individual basis and within individual time frames, before filing suit." *Jefferson*, 161 F.R.D. at 69. Plaintiff argues that in this case each class member will retain the right to give such notice and go through the twenty day period. But that argument simply points to an even bigger problem. It is undisputed that the purported class members (other than Mr. Gibbons) have not submitted notices to rescind. Thus, plaintiff is effectively asking for an advisory opinion. Without any rescission requests, nor subsequent denials by defendants, it is not at all clear that a justiciable controversy exists between the class and defendants. *See Jefferson*, 161 F.R.D. at 69.

---

proper, then the right to rescind extends for three years after consummation. Thus, the time period in which to rescind will differ for every

class member—it will be three years from the date of each consummation and in light of any tolling by virtue of this lawsuit.

Additionally, the court finds persuasive the decisions by other courts concluding that Congress did not intend to allow class-wide rescission actions. *See James*, 621 F.2d at 730; *Jefferson*, 161 F.R.D. at 69. The Fifth Circuit noted in *James v. Home Const. Co. of Mobile, Inc.*, 621 F.2d 727, 731 n. 7 (5th Cir.1980), that there is a potential conflict of interest among class members when seeking rescission from a credit institution of limited solvency. Here, that potential is better phrased as a likelihood in light of plaintiff's assertion that Interbank is "out of business." [9] The court in *James* also noted that the availability of attorney fees under the statute means it is feasible for individual consumers to bring their own actions. *Id.* That point is applicable regardless of whether the relief sought is rescission or a declaration authorizing rescission. Finally, the Fifth Circuit noted that § 1635 "is not a penal provision." *Id.* at 730. The court agrees with the Northern District of Illinois that "allowing a class of plaintiffs to rescind their agreements against an individual defendant when the cost of recovery would exceed the harm done by the technical violation ... would turn Section 1635(b) into a penal provision." *Jefferson*, 161 F.R.D. at 69.

However, even if it were appropriate to issue a declaration authorizing class-wide rescission, the court would not certify *this* class because it fails to satisfy the Rule 23(a) requirements for commonality and typicality.[10]

■ PSB argues that commonality cannot be met because of the predominance of individual issues—namely whether each loan was used for personal or business purposes.

PSB also notes that certain loans may have been consummated on the same day that loan documents were signed (in which case there would be no violation stemming from the acknowledgment form). Finally, PSB argues that plaintiff has typicality problems because he did not rely on any of the language in the loan documents.

Plaintiff responds that the issue of whether the loans were used for personal purposes is solved by the class definition—it specifically excludes those who used the loans for business. As to other commonality issues, plaintiff argues that there are "two substantial issues common" to the class. The first is "whether the Acknowledgment form precluded consummation." The second is whether receiving an H–9 form instead of H–8 "in loan transactions that are not same-creditor-refinance transactions violates TILA." PSB claims that the argument that some loans may have been consummated on the date papers were signed is "pure speculation." Finally, plaintiff argues that reliance on the disclosures is irrelevant and does not render him an inadequate representative.

■ Regarding the personal/business purposes distinction, it appears plaintiff is correct. Once a declaration issues, it may be determined in other proceedings whether a person qualifies as a member of the class. However, the court notes that this burden could be substantial. The little discovery that has occurred to date indicates that even plaintiff Gibbons may not qualify for relief under TILA because he used proceeds for business purposes despite his sworn statements in the loan documents to the contrary.[11]

---

9. The court notes additionally that the absence of the proper defendants renders certification problematic, at best. Prior to the hearing, PSB notified the court of its belief that it may not own any of the loans in the proposed PSB sub-class. Plaintiff pointed out, rightfully so, that PSB had yet to provide any admissible proof of that assertion. Indeed, to this day the court has not heard anything further from PSB on the subject. However, if Interbank is "out of business," it is doubtful that it owns any of the loans or resulting security interests. Even assuming the court's declaration could be used against the current (unknown) holders of these loans, the declaration will have been issued without opposition from the parties having an actual interest in the litigation.

10. PSB has stipulated that the subclass meets the numerosity requirement. The adequacy requirement is also not disputed.

11. During his deposition, plaintiff revealed that he used his loan to pay off three credit card accounts. Regarding a credit card issued by First USA Bank, plaintiff was asked whether he used that credit card for business expenses. Gibbons Depo. at 14:9–10. He responded, "No." *Id.* at 14:11. However, he later submitted an amendment to his transcript whereby he

Similarly, it does not appear that plaintiff's failure to rely on the disclosures is particularly relevant. Rather, the primary difficulty plaintiff faces lies with the two issues that he asserts are common to all class members. The analysis necessary for the summary judgment motion (above) shows that the answers to each of plaintiff's "common" issues are likely to differ with each class member.

Crucial to this analysis is the relief plaintiff is requesting—a declaration that all class members have the right to rescind. Put another way, plaintiff is requesting that the court declare that the documents sent to each class member resulted in a TILA violation and that class members have a currently viable right to rescind.

Plaintiff identifies the first common issue as "whether the Acknowledgment form precluded consummation." The court notes that the class is defined as those who "Signed and/or received" an acknowledgment form. Thus an initial question is whether a member who signed the form might be entitled to relief whereas someone who didn't might not. Even more importantly, the analysis used in the motion for summary judgment shows that mere receipt of the acknowledgment document does not settle the question of whether a class member is entitled to relief. Plaintiff is asking the court to focus on a single document to determine whether the contract was consummated. But class members received many documents, and as shown above those documents are relevant to the question of consummation. Plaintiff makes no showing as to whether other class members received and/or signed the additional documents referenced above. In determining when a class member's loan consummated, the court will need to examine the totality of circumstances surrounding each transaction, including all of the documents received and the date that each loan was actually funded. The court cannot make this determination on the basis of the acknowledgment form alone.

A similar analysis applies to plaintiff's second common issue—whether receiving an H–9 form instead of H–8 "in loan transactions that are not same-creditor-refinance transactions violates TILA." The relevant inquiry is not the number on the form received by each borrower—it is whether the language in the form adequately informs the recipient of his/her rights. The individualized nature of this inquiry was made clear by plaintiff's arguments on summary judgment. In opposing that motion, plaintiff argued that the first sentence of the H–9 form is confusing because the phrase "credit previously provided to you" may refer to plaintiff's credit card debt that he was using the Interbank loan to pay off. Presumably plaintiff is arguing that if he did not have credit card debt, the form would be (at least to some extent) less objectionable. But there is no allegation that all class members used their loans to pay off credit cards. Plaintiff's argument is that this particular notice may have been more misleading to him than to others. That highlights the problems with making this determination on a class-wide basis.

For the foregoing reasons, plaintiff's motion for class certification is DENIED.

## CONCLUSION

In accordance with the foregoing, defendant PSB's motion for summary judgment is DENIED. Plaintiff's motion for class certification is also DENIED. This order fully

---

changed his answer to "Possibly." Plaintiff was also asked whether any of the three credit card accounts were used for business expenses. *Id.* at 16:10–16. He responded, "Not that I recall. There may have been a rare charge, but I do not recall." *Id.* at 16:17–18. Again, he later amended this answer to read: "When I charged business expenses, I *primarily* used the Key Bank of Southeast account ... my memory is that *approximately half of the balance on the Key Bank Account consisted of business charges at the time the Interbank loan was funded.*" Attachment to

Gibbons' Depo. (emph. added). The total amount of the loan was $40,000. Gibbons Depo., Ex. 10. The balance on the Keybank account at the time of funding was $8,854.00 and it appears Interbank made a disbursement directly to Keybank in that amount. *Id.* Thus, plaintiff concedes that at least $4,427.00 of the money loaned to him (or 11%) went to business expenses. Additionally, plaintiff concedes that the actual amount may have been higher, since he may have used other accounts for business as well.

adjudicates the motions listed at Nos. 31–1 and 21–1 on the clerk's docket for this case.

**IT IS SO ORDERED.**