**Darren MCINTOSH and Patricia Quinton, Plaintiffs,**

v.

**IRWIN UNION BANK AND TRUST, CO., Defendant.**

**No. CIV.A. 01–11174–WGY.**

United States District Court, D. Massachusetts.

May 13, 2003.

---

Christopher M. Lefebvre, Law Offices of Claude Lefebvre & Sons, Pawtucket, RI, for plaintiffs.

Mindi Connelly, Kirkpatrick & Lockhart, Boston, MA, for defendant.

*MEMORANDUM AND ORDER*

YOUNG, Chief Judge.

## I. INTRODUCTION

Darren McIntosh and Patricia Quinton ("the McIntoshes"), bring suit against the assignee of their mortgage, Irwin Union Bank and Trust, Co., ("Irwin Union"), pursuant to the Truth in Lending Act, ("TILA"), 15 U.S.C. § 1601 *et. seq.*, as amended by the Home Ownership and Equity Protection Act of 1994 ("HOEPA"), 15 U.S.C. §§ 1602(aa)

and 1639. They allege that the note securing their 1998 mortgage loan—which they originally obtained from the lender FirstPlus Financial, Inc., ("FirstPlus"), and which was later assigned to Irwin Union—violated TILA (as amended by HOEPA) because its prepayment penalty clause did not disclose that, pursuant to HOEPA, no penalty would be due if the borrowers refinanced their loan with funds provided by the original creditor.

The McIntoshes refinanced their loan with a different agency and thus were subject to prepayment penalties. They seek to hold Irwin Union liable, as an assignee, for the note's purported deficiency. They also seek to certify this case as a class action on behalf of all those similarly situated. In their Amended Complaint, they request several forms of relief. Count One seeks a declaratory judgment that they and similarly situated borrowers are entitled to rescind their loans and that Irwin Union is not entitled to foreclose their mortgages. Am. Compl. ¶ 28. In Count Two, the McIntoshes bring an individual claim for rescission of their loan, attorneys' fees, litigation expenses, and costs. Am. Compl. ¶ 36. Finally, Count Three makes a class claim for statutory damages pursuant to 15 U.S.C. § 1640. Am. Compl. ¶ 39.

On September 30, 2002, the Court granted the McIntoshes' motion for class certification, subject to certain limitations. See September 30, 2002 Order [Docket No. 42]. In its order, the Court stated that the class would consist of those parties who had obtained from FirstPlus—after July 6, 1998—a HOEPA loan, subsequently assigned to Irwin Union, containing a prepayment penalty clause that did not, by its terms, prohibit application if the loan was refinanced by the same lender. *Id.* The Court further ordered that, at the McIntoshes' expense, "each prospective class member's mortgage document must be examined to ensure that this is the case." *Id.*

Irwin Union, having already moved for summary judgment [Docket No. 33] on the McIntoshes' individual claims prior to the Court's certification of the above class, subsequently moved for reconsideration of the order granting class certification [Docket No. 47]. The Court here addresses both of these motions.

## A. Facts

The facts are essentially undisputed by the parties. The McIntoshes reside in Lynn, Massachusetts. Def.'s 56.1 Stmt., ¶ 1. In late 1998, Mr. McIntosh—seeking to consolidate his credit card debts—contacted FirstPlus to obtain a second mortgage loan. *Id.* at ¶ 2. The loan, in the amount of $23,988.07, closed on December 10, 1998. *Id.* at ¶ 3. The mortgage note for the McIntoshes' loan contains the following disclosure regarding the loan's prepayment penalty:

> If an amount of twenty percent (20%) of the original principal balance is prepaid in any twelve month period within three years of the date of the loan, a prepayment penalty will be charged in an amount equal to six (6) months' interest on the amount prepaid in excess of twenty percent (20%) of the original principal balance.

Am. Compl., Exhibit A.

On or about December 20, 1999, this loan was assigned to Irwin Union. At some point after the loan was acquired by Irwin Union, the McIntoshes received a general flyer in the mail from the attorney in this action, Christopher Lefebvre, Esq. ("Lefebvre"), inviting individuals who had obtained loans from FirstPlus to call him for information regarding potential legal claims. Def.'s 56.1 Stmt., ¶ 6.

On April 26, 2001, after discussing the matter with Lefebvre and engaging him as their counsel, the McIntoshes paid off their loan through refinancing with another lender. In other words, the McIntoshes prepaid the FirstPlus loan that had been assigned to Irwin Union and also paid Irwin Union the concomitant prepayment penalty. *Id.* at ¶ 8–9; *see also* Am. Compl. at ¶ 19.

On July 3, 2001, the McIntoshes sent notice of their intent to rescind to their loan's mortgage servicer, Irwin Home Equity, and not to Irwin Union. See Pl.'s Opp'n to Summ. J., Ex. A. They have provided a sworn declaration to this Court that they sent this notice of their intent to rescind to their loan servicer, rather than to Irwin Un-

ion, because they had never been informed that Irwin Union had any interest in their loan. Pls.' Declaration [Docket No. 52]. Irwin Union states that it has no record of receiving such notice. Def.'s Rep. Mem. [Docket No. 47] at 7.

On July 6, 2001—three days after having sent their notice of rescission to Irwin Home Equity—the McIntoshes filed the original complaint in this action, alleging that the prepayment penalty disclosure in their note from FirstPlus violated TILA (as amended by HOEPA) because it failed to disclose that no prepayment penalty would be charged if the loan was refinanced through the original creditor. In this complaint, the McIntoshes named Irwin Home Equity as the defendant. On October 17, 2001, the McIntoshes amended their complaint to name Irwin Union as the defendant. As noted above, on September 30, 2002, the Court certified a class in this action; Irwin Union here moves both for summary judgment on the McIntoshes' individual claims and for reconsideration of the Court's certification of a class.

## II. DISCUSSION

### A. Irwin Union's Motion for Summary Judgment

#### 1. Standard of Review

Summary judgment shall enter as matter of law in absence of a genuine issue as to any material fact. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Only factual disputes that might have an impact on the outcome of the trial can preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The movant, however, is not required to make an affirmative showing that there are no material facts in issue. Instead, the movant need only show an "absence of evidence to support the non-moving party's case." *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548. Furthermore, "[o]n issues where the nonmovant bears the ultimate burden of proof, he must present definite, competent evidence to rebut the motion." *Mesnick v. General Elec. Co.,* 950 F.2d 816, 822 (1st Cir.1991).

#### 2. Analysis

Irwin Union's motion for summary judgment on the McIntoshes' individual claims rests on two central arguments: (1) that the McIntoshes do not have a right to seek rescission of their loan; and (2) that the McIntoshes did not satisfy the statutory prerequisites for filing this claim because they failed to serve notice properly upon Irwin Union. The Court discusses each contention in turn.

#### a. Right of Rescission

The McIntoshes' right of rescission is a central issue in this case. More exactly, the issue is whether rescission is possible when—as here—the mortgage loan is satisfied prior to the borrower's attempt to rescind the loan. This is a crucial question because, as this Court discusses below, unless the McIntoshes continue to have a right to rescind, their individual claims are time-barred.

TILA was enacted to further the "informed use of credit" and to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him." 15 U.S.C. § 1601(a) (2000). It also seeks to enhance economic stabilization and competition among financial institutions by requiring the meaningful disclosure of credit terms to consumers. *Id.*

HOEPA, an amendment to TILA, was enacted "to ensure that consumers understand the terms of such loans and are protected from high pressure sales tactics ... [it] prohibits High Cost Mortgages from including certain terms such as prepayment penalties and balloon payments that have proven particularly problematic." S.Rep. No. 103–169, at 21. To qualify as a HOEPA loan, the loan must be "a consumer credit transaction that is secured by the consumer's principal dwelling, other than a residential mortgage transaction, a reverse mortgage transaction, or a transaction under an open end credit plan," and must further meet one of two requirements:

(A) the annual percentage rate at consummation of the transaction will exceed by more than 10 percentage points the yield

on Treasury securities having comparable periods of maturity on the fifteenth day of the month immediately preceding the month in which the application for the extension of credit is received by the creditor; or

(B) the total points and fees payable by the consumer at or before closing will exceed the greater of—

(i) 8 percent of the total loan amount; or

(ii) $400.

15 U.S.C. § 1602(aa)(1); *see also Fluehmann v. Associates Financial Services,* No. CIV. A.01–40076, 2002 WL 500564, *4 (D.Mass. March 29, 2002) (Gorton, J.).

If a loan is covered by HOEPA, it may not contain a prepayment penalty, unless that penalty meets certain requirements. 15 U.S.C. § 1639(c). One of those requirements is that the penalty must apply "only to a prepayment made with amounts obtained by the consumer by means *other than a refinancing by the creditor under the mortgage, or an affiliate of that creditor." Id.* at § 1639(c)(2)(B).

Section 1635 of TILA addresses borrowers' rights of rescission. Under this Section and its implementing regulations, a borrower's right to rescind a contract exists for three days after the closing of a loan, or for three years thereafter if a material disclosure as defined in the implementing regulations is not made. *See* 12 C.F.R. § 226.23(a)(3) and n. 48; 12 C.F.R. § 226.32(d)(6) and (7). Failure to include information on the lack of prepayment penalties qualifies as a material misstatement. *Id.* at § 226.23(a)(3) n. 48. This right to rescind applies as against assignees, as well as to original lenders, notwithstanding whether the material misstatement is apparent from the face of the document. *See* 15 U.S.C. § 1641(c) (2000) ("Any consumer who has the right to rescind a transaction under section 1635 of this title may rescind the transaction as against any assignee of the obligation.").

Moreover, Section 1635(g) entitles borrowers not only to rescission but also to statutory damages under 15 U.S.C. § 1640. Section 1640 covers civil liability and statutory damages for violations of TILA. The statute of limitations for actions alleging statutory damages under Section 1640(e) is normally one year, but if the plaintiffs have the right to rescind based on the lack of a material disclosure, the *three year* period for rescission claims under Section 1635(g) applies. Section 1635(g) reads:

> In any action in which it is determined that a creditor has violated this section, *in addition to rescission the court may award relief under section 1640 of this title* for violations of this subchapter not relating to the right to rescind.

15 U.S.C. § 1635(g) (2000) (emphasis added). Therefore, if the McIntoshes do have the right to rescind, the statute of limitations for the damages they seek is three years, not one, and their case was timely brought, as it was filed on July 6, 2001—within three years of the loan's issuance on December 10, 1998.

■ Irwin Union argues, however, that the McIntoshes do *not* have the right to rescind, on grounds that a borrower does not have the right to rescind after the mortgage has been paid off. Def.'s Mem. for Summ. J. [Docket No. 34] at 6. If this contention is correct, then the McIntoshes' claim is governed by Section 1640's one-year statute of limitations and is therefore time-barred.

The First Circuit has not addressed the issue of whether a borrower has a right to rescind once the mortgage has been paid off, and the case law is split on the subject. In *King v. California,* 784 F.2d 910, 913 (9th Cir.1986), the Ninth Circuit held that the plaintiff could not obtain rescission pursuant to TILA because "there is nothing to rescind. [The plaintiff] refinanced that loan in November 1981, and the deed of trust underlying the March 1981 loan has been superseded." Whereas some courts have agreed with this conclusion, *see, e.g., Coleman v. Equicredit Corp.,* No. 01 C 2130, 2002 WL 88750 (N.D.Ill. Jan.22, 2002) (unpublished opinion), other courts have rejected it, *see, e.g., Duren v. First Government Mortgage and Investors Corp.,* 221 F.3d 195, 2000 WL 816042 at *2 (D.C.Cir.2000) (unpublished opinion) [1] ("[W]e

---

1. For the propriety of citing an unpublished opinion, see *Anastasoff v. United States,* 223 F.3d

disagree with [defendant's] contention that the refinancing of the 1994 loan rendered unavailable TILA's statutory rescission remedy, notwithstanding the Ninth Circuit's terse suggestion to the contrary in *King v. State of California*."); *Pulphus v. Sullivan*, No. 02 C 5794, 2003 WL 1964333 (N.D.Ill. April 28, 2003) ("The *King* court...concluded that refinanced loans could not be rescinded without any analysis or citation to authority ... [this] conclusion, however, is at odds with TILA and its regulations."); *In re Wright*, 127 B.R. 766, 770 (Bankr.E.D.Pa.1991) (same).

This Court rejects Irwin Union's argument that it should apply *King* to this case, thereby rendering the McIntoshes' claim time-barred, for two reasons. First, as several courts have noted, a serious flaw in *King's* approach is that the implementing regulations of TILA never state that paying off a loan in full cuts off unexpired rescission rights. Rather, the implementing regulations state that "if the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, [or] upon sale of the property, whichever occurs first." *See* 12 C.F.R. § 226.23(a)(3); *see also Pulphus*, 2003 WL 1964333 at *17. The fact that the regulations set forth an enumerated list of events that cut off rescission rights— and do not include the payment in full of the loan as one of those events—speaks against Irwin Union's argument.

Second, some of the cases that do apply *King* are nonetheless distinguishable in relevant respects from the claim presented here by the McIntoshes. In *Coleman*, for example, the court noted that the plaintiffs "have been fully compensated for all the damages they sustained due to the violation of Section 1635. The only actual damages that the [plaintiffs] claim they sustained were the prepayment penalty, the origination charges, and the excess interest paid. The evidence shows that the [plaintiffs] received full reimbursement for these items." 2002 WL 88750 at *3. Here, by contrast, the McIntoshes' damages have *not* been fully reimbursed. Irwin Union's argument presupposes that the true intent of TILA was that prepayment penalties arising from a lack of material disclosure in the lending note would not be recoverable via a claim for rescission under Section 1635. This Court derives no such intent from the statute and declines so to rule. A claim for rescission under Section 1635 is a permissible vehicle for attempting to recover prepayment penalties and interest charges.

Accordingly, TILA's three-year statute of limitations under Section 1635 is applicable to the McIntoshes' case. The McIntoshes' case, therefore, is timely brought and may proceed.

### b. Improper Notice

■ Having concluded that the McIntoshes' claim is not time-barred, the Court now must consider Irwin Union's argument that the McIntoshes did not give proper notice of their intention to rescind, insofar as they sent their notice of rescission to Irwin Home Equity (rather than Irwin Union) and did so only three days prior to filing suit. Irwin Union argues that "Section 1635(b) of TILA requires an obligor to give the creditor notice of his or her intent to rescind and gives the creditor twenty (20) days to act on that notice before a federal lawsuit may be filed." Def.'s Mem. for Summ. J. at 7. What the statute actually states, however, is that:

> When an obligor exercises his right to rescind under subsection (a) of this section, he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission. Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any

898, 899–905 (8th Cir.2000) (Arnold, J.) (holding that unpublished opinions have precedential effect), *vacated as moot*, 235 F.3d 1054 (8th Cir. 2000) (en banc), *Giese v. Pierce Chem. Co.*, 43 F.Supp.2d 98, 103 (D.Mass.1999) (relying on unpublished opinions' persuasive authority), and

Richard S. Arnold, *Unpublished Opinions: A Comment*, 1 J.App. Prac. & Process 219 (1999). *See also* Richard L. Neumeier, *Ethics of Appellate Advocacy: Unpublished Opinions* (Oct.2001) (unpublished seminar paper, on file with author).

money or property given as earnest money, down payment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction.

15 U.S.C. § 1635(b).

Irwin Union is correct that some courts have held that this section requires debtors first to request rescission of the loan before filing a complaint. *James v. Home Constr. Co.*, 621 F.2d 727, 731 (5th Cir.1980); *Jefferson v. Security Pacific Financial Services*, 162 F.R.D. 123, 126 (N.D.Ill.1995). Many other courts have held, however, that the filing of the complaint itself can, in a rescission action, constitute notice for the purposes of TILA, and that no prior request for rescission is necessary. *See, e.g., Taylor v. Domestic Remodeling, Inc.*, 97 F.3d 96, 100 (5th Cir.1996); *Eveland v. Star Bank, NA*, 976 F.Supp. 721, 726 (S.D.Ohio 1997); *Elliott v. ITT Corp.*, 764 F.Supp. 102, 106 (N.D.Ill. 1991); *In re Rodrigues*, 278 B.R. 683, 689 (Bankr.D.R.I.2002) (Votolato, Br. J.). The Court agrees with Judge Votolato's conclusion that no such requirement is present in Section 1635 and therefore rejects Irwin Union's argument that the McIntoshes' failure to provide such pre-complaint notice to them requires dismissal of their claim. Accordingly, Irwin Union's motion for summary judgment on the McIntoshes' individual claims is denied.

### B. Reconsideration of Class Certification

The Court now reconsiders the thorny issue of class certification. Reconsideration is appropriate here because the Court needs both to fine-tune its original class certification order[2] and address the issue of class certification in more depth, as its brief bench order did not fully explicate its reasons for granting class certification. *See Smilow v. Southwestern Bell Mobile Systems, Inc.*, 323 F.3d 32, 38, 41 (1st Cir.2003) ("A district court must conduct a rigorous analysis of the prerequisites established by Rule 23 before certifying a class," but noting that "class

certification prerequisites should be construed in light of the underlying objectives of class actions."). *See also* Scott S. Partridge and Kerry J. Miller, *Some Practical Considerations for Defending and Settling Product Liability and Consumer Class Actions*, 74 Tul. L.Rev. 2125, 2129 (2000).

As part of its remedial nature, TILA rewards a successful plaintiffs' class with statutory damages not to exceed the lesser of $500,000 or one percent of the net worth of the defendant company. 15 U.S.C. § 1640(a)(2)(B) (2000). In contrast, the McIntoshes alone can only recover actual damages as well as a maximum of $2,000 in statutory damages. 15 U.S.C. § 1640(a)(2)(A)(iii) (2000). This, then, is a battle worth waging and the parties go at it with a will.

■ Irwin Union makes several arguments in favor of reconsideration. To the extent Irwin Union argues that the McIntoshes are not adequate class representatives because they do not have a claim for rescission and are therefore time-barred, that argument is rejected pursuant to the above analysis. Irwin Union also argues, however, that class action is an inappropriate vehicle with which to seek rescissory damages because rescission—an equitable remedy—is an individualized form of relief. Section 1640 (TILA's damages section) specifically addresses class actions, but Section 1635 (TILA's section on rescission) is silent on the subject.

The First Circuit has not addressed the availability of class actions seeking actual rescission (or a declaratory judgment that the class members are entitled to rescission, as requested here) under TILA, and the case law is split on the issue. The courts in *James* and *Jefferson* held that rescission is a "purely personal remedy," such that a debtor could not initiate a class action on the basis of a rescission claim. *See James*, 621 F.2d at 731; *Jefferson v. Security Pacific Financial Services, Inc.*, 161 F.R.D. 63, 68 (N.D.Ill. 1995). The *James* court's holding rested in significant part on its interpretation of Sec-

---

**2.** The interlocutory appeal now being prosecuted by Irwin Union pursuant to Fed.R.Civ.P. 23(f) appears not to divest this Court of jurisdiction to

reconsider its own order because the First Circuit has stayed its hand until this Court has acted on the motion for reconsideration.

tion 1635—rejected by this Court, as discussed above—that a debtor must first file a notice of rescission and abide by a waiting period before filing suit. *James,* 621 F.2d at 731. The *Jefferson* court similarly based its holding on that interpretation of Section 1635. It further reasoned that permitting class actions for rescission under Section 1635 "would turn Section 1635(b) into a penal provision," stating:

> [A]n action seeking rescission under TILA § 1635 should not be certified. Technical violations of TILA are strict liability offenses and thus do not require a showing of harm to the plaintiff. An award of rescission, whether "declaratory" or not, would (as Security Pacific argues) impose enormous penalties on the lender (including the loss of interest for the entire period of the loan) out of all proportion to any alleged harm done to them.

*Jefferson,* 161 F.R.D. at 69–70.

Other courts, however, have ruled that a class seeking rescission under Section 1635 can indeed be certified, particularly where the plaintiffs seek a declaratory judgment that the class members are entitled to rescission. *See, e.g., Williams v. Empire Funding Corp.,* 183 F.R.D. 428, 435 (E.D.Pa.1998); *see also Tower v. Moss,* 625 F.2d 1161, 1163 (5th Cir.1980). The *Williams* court reasoned that:

> Plaintiffs only seek a declaration that the notices of rescission in the sales and financing contracts violate TILA, and thus that each member of the class is entitled to seek rescission. Should the Court declare that, indeed, plaintiffs are entitled to seek rescission because of certain infirmities in the TILA disclosure documents, then each class member, individually, and not as a member of the class, would have the option to exercise his or her right to seek rescission. As to any member of the class who triggered the statutory right to rescission, the Empire defendants would have, in turn, the opportunity to exercise their rights to cure under TILA. Viewed in that light, the Court finds that there is nothing in the language of TILA which precludes the use of the class action mechanism provided by Rule 23 to obtain a judicial decla-

ration whether an infirmity in the documents, common to all members of the class, entitles each member of the class individually to seek rescission.

183 F.R.D. 428, 435–36; *but see Gibbons v. Interbank Funding Group,* 208 F.R.D. 278, 285 (N.D.Cal.2002) (describing, in dicta, the distinction as "one of form more than substance").

This Court agrees with this latter line of cases holding permissible class actions seeking rescission. The Court is unpersuaded by the *Jefferson* court's rationale that class actions seeking rescission under Section 1635 are inappropriate because such actions would render Section 1635 penal in nature. To achieve its remedial purpose, TILA *is* penal in nature and builds in incentives for litigation to protect classes of plaintiffs who, individually injured, would never sue to recover modest damages. It is that injury that resonates with this Court. Moreover, the Court agrees with the *Williams* court's conclusion that the case for class certification is even stronger when, as here, the plaintiffs seek only declaratory relief.

Based upon the above reasoning, this Court concludes that a narrowing of the class is appropriate. The Court hereby further limits the potential class to those actually injured—specifically, to those parties who, like the McIntoshes, refinanced their HOEPA loans with another lender and incurred prepayment penalties. If this group warrants class treatment, the statutory damages follow naturally. If not, the suit may be maintained individually, with notice to those who have not yet refinanced and may possibly suffer harm from the allegedly inadequate loan provisions.

With this further narrowing of the class, the Court now turns to analysis of this case pursuant to Federal Rule of Civil Procedure 23. The requirements that must be met to bring a class action constitute a meaningful burden. Specifically, for the named plaintiffs to obtain class certification and participate in this form of judicial administration, the Court must find that:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the

class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a).

If the prerequisites of Rule 23(a) are satisfied, the Court must make further findings under Rule 23(b) to determine whether the lawsuit may be maintained properly as a class action. The McIntoshes request certification under Rule 23(b)(3), which reads:

> (b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition: ... (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed.R.Civ.P. 23(b)(3).

### 1. Rule 23(a) Requirements

#### a. Common Questions of Law and Fact

The questions of law and fact presented by this case are common. The legal questions hinge on the alleged defectiveness of those loan documents assigned to Irwin Union that originated with FirstPlus; the rights of rescission of each class member; notice of rescission being traced back to the complaint; the available statutory damages; the harm from refinancing subject to a pre-payment penalty; and the like. All of these questions arise out of the same basic nucleus of facts, given the Court's above limitations of the class.

#### b. Typicality

The claims of the representative parties in the case, the McIntoshes, are typical of those of the proposed class members. As noted above, the Court has narrowed the class to include only parties who, like the McIntoshes, had a loan that (1) originated from FirstPlus after July 6, 1998; (2) was subject to HOEPA; (3) contained a prepayment penalty clause that did not, by its terms, prohibit application if the loan was refinanced with the same lender; (4) was assigned to Irwin Union; and (5) was prepaid through refinancing with another lender, such that prepayment penalties were imposed. Given these limitations, the so-called "typicality" requirement of Rule 23 is satisfied.

#### c. Adequacy

In a class action, the named plaintiffs must show themselves to be adequate class representatives, that is, that no potential conflict exists between them and the other class members and that they will vigorously prosecute the action. *See, e.g., Tilley v. TJX Companies,* 212 F.R.D. 43, 46–47 (D.Mass. 2003) (Gertner, J.). Here, despite Irwin Union's arguments, the McIntoshes are able to make a timely rescission-based claim under Section 1635(g). They can fairly and adequately protect the interests of any class basing their claims in rescission. They have retained counsel with obvious experience in handling class actions and actions involving unfair business practices, including TILA-based claims. Moreover, their interests are aligned with their fellow class members, who are similarly situated; no conflict of interest is present. Accordingly, the McIntoshes satisfy the adequacy requirement.

#### d. Numerosity

■ Ah, here's the rub. Irwin Union has obtained 20,253 loans through assignment. *See* John Peiler Aff. [Docket No. 26] ¶ 4. The McIntoshes argue that if only 20% of these loans are subject to HOEPA (4,000), and 10% of *these* loans contain invalid prepayment penalties, there will still be a group of 400. *See* Pl.'s Reply Mem. Supp. Class Certifica-

tion [Docket No. 30] at 4. This reasoning is simply speculative. One might as well suppose only 10% of these 400 loans came from FirstPlus (40), and that 10% of these 40(4) subsequently refinanced with another lender and paid prepayment penalties. The record is simply silent on these matters.

■ Of course, a Court need not know the exact number of proposed class members to find numerosity satisfied; rather, it may use common sense in estimating the class size. *See, e.g., Levitan v. McCoy,* No. 00 C 5096, 2003 WL 1720047, at *3 (N.D.Ill. March 31, 2003) ("In determining whether a class meets the numerosity requirement, a court can apply common sense to the facts available."); *Civic Association of the Deaf of New York City, Inc. v. Giuliani,* 915 F.Supp. 622, 632 (S.D.N.Y.1996) ("Although Rule 23(a)(1) requires that the class must be so numerous that joinder of all class members is impracticable, precise quantification of the class members is not necessary because the court may make 'common sense' assumptions to support a finding of numerosity."). Still, the McIntoshes bear the burden of proof on numerosity and, as yet, they have not definitively satisfied their burden. Moreover, there is the suggestion in these papers that the McIntoshes may be the *only* plaintiffs who now fall within the contours of the redefined class. Barratry may no longer be a tort in Massachusetts, *Saladini v. Righellis,* 426 Mass. 231, 687 N.E.2d 1224 (1997), but it will simply not do for a skilled lawyer to find a defect in complex loan documents himself, induce action that causes actual if modest economic harm to befall his clients and then bring a class action for $500,000 in statutory damages on behalf of a class. This would be a species of "rent seeking" through litigation—a "ticket" into court that confers a credible threat to sue the vulnerable—and which, like the "strike suit," is universally decried by economists as being without social utility. *See e.g.,* Michael J. Meurer, *Controlling Opportunistic and Anti–Competitive Intellectual Property Litigation,* Boston College Law Review (forthcoming 2003). It is unlikely that Congress intended such a result. Why, then, does the Court not vacate its earlier order in its entirety? There are two reasons.

First, the loan documents in this case involve a standard form, and it is clear that many loans were made and assigned. An inference of numerosity is thus warranted. Second, Irwin Union has adamantly refused any access to its loan files absent specific court order. While vigorous advocacy is never to be discouraged, Irwin Union has known the general outline of the class certified for over half a year. It is not shy about filing briefs. This Court is thus justified in inferring numerosity in the class originally certified since it has been open to Irwin Union to demonstrate the contrary for months. Now that the class has been further restricted, Irwin may still do so (albeit before the Court of Appeals, which will have jurisdiction over the class action issue under Fed.R.Civ.P. 23(f) once this ruling on Irwin Union's motion for reconsideration is docketed). It cannot be reiterated too strongly that denial of class certification is the effective death knell of this litigation. This Court will not now take that step on the present record, as it appears Irwin Union may well be hiding something to the detriment of consumers.

Having thus concluded that the class, as further narrowed pursuant to this opinion, satisfies the requirements of Rule 23(a), the Court now moves on to consider whether it also meets the criteria of Rule 23(b).

### 2. Rule 23(b)(3) Requirements: Superiority and Predominance

■ Assuming numerosity, the McIntoshes correctly point out that typical homeowners holding a mortgage subject to HOEPA would likely be financially unable to retain their own lawyers, that expecting them to bring claims individually even if they had such notice of a right to rescind and recover prepayment penalties is unrealistic, and that these problems are cured by a class action. These arguments have merit and this Court rules that a class action is a superior method for handling this litigation rather than requiring each homeowner or refinancer to make individualized claims for relief. The Court also concludes that, given the above limitations of the scope of the class, the questions of law or fact common

36

to the class predominate over any questions that affect only individual members. Accordingly, the requirements of Rule 23(b)(3) are met.

As a final matter, the Court addresses Irwin Union's argument that the Court lacks subject matter jurisdiction in this case. Irwin Union argues that no "actual controversy" exists under the Declaratory Judgment Act, 28 U.S.C. § 2201, because the class members have not yet decided to exercise their right of rescission by providing the required notice. Limiting the class to those actually harmed by the arguably improper payment of prepayment penalties, however, resolves this concern because these injuries create the current controversy.

## III. CONCLUSION

Accordingly, Irwin Union's Motion for Summary Judgment on the McIntoshes' Individual Claims [Docket No. 331] is DENIED. Irwin Union's Motion for Reconsideration of Class Certification [Docket No. 47] is GRANTED in part and DENIED in part. The class shall now consist of those parties who had a loan that (1) originated from FirstPlus after July 6, 1998; (2) was subject to HOEPA; (3) contained a prepayment penalty clause that did not, by its terms, prohibit application if the loan was refinanced with the same lender; (4) was assigned to Irwin Union; and (5) was prepaid through refinancing with another lender, such that prepayment penalties were imposed.

SO ORDERED.