Ralph G. McKENNA, Glenroy A. Deane, Ilene Wilgoren–Deane, and Laura A. Lillie, Plaintiffs

v.

FIRST HORIZON HOME LOAN CORPORATION, Defendant

No. C.A.04–10370–RCL.

United States District Court, D. Massachusetts.

March 31, 2006.

---

3. The parties are hereby advised that under the provisions of Fed.R.Civ.P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review. *See* *Keating v. Sec'y of Health & Human Servs.,* 848 F.2d 271, 275 (1st Cir.1988); *United States v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir.1986); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603, 604–605 (1st Cir.1980); *United States v. Vega,* 678 F.2d 376, 378–79 (1st Cir.1982); *Scott v. Schweiker,* 702 F.2d 13, 14 (1st Cir.1983); *see also Thomas v. Arn,* 474 U.S. 140, 153–54, 106 S.Ct. 466, 474, 88 L.Ed.2d 435 (1985). *Accord Phinney v. Wentworth Douglas Hosp.,* 199 F.3d 1, 3–4 (1st Cir.1999); *Henley Drilling Co. v. McGee,* 36 F.3d 143, 150–51 (1st Cir.1994); *Santiago v. Canon U.S.A., Inc.,* 138 F.3d 1, 4 (1st Cir. 1998).

Julie M. Wade, Goodwin Procter, LLP, Boston, for First Horizon Home Loan Corporation, Defendant.

U. Gwyn Williams, Goodwin Procter, LLP, Boston, for First Horizon Home Loan Corporation Counter Claimant.

## ORDER ON MOTION FOR CLASS CERTIFICATION

LINDSAY, District Judge.

The named plaintiffs have brought this action for rescission and statutory damages alleging violations by the defendant of the Truth In Lending Act, 15 U.S.C. §§ 1601 *et seq.* ("TILA"), the Massachusetts Consumer Credit Cost Disclosure Act, Massachusetts General Laws c. 140D ("MCCCDA") and Massachusetts General Laws ch. 93A. The plaintiffs seek certification of a plaintiffs class which they define as (a) all natural persons (b) who obtained non-purchase money loans that were secured by their Massachusetts residences (c) on or after April 1, 2003, (d) for purposes for other than the initial construction or acquisition of those residences (e) where the person received a [notice of right to cancel] in the form of Exhibit D attached to the Amended Complaint. I referred the motion to Magistrate Judge Judith Gail Dein for a report and recommendation ("Report"). Judge Dein issued her Report on November 10, 2005. In it she recommended that a plaintiffs' class, narrower than that originally requested, be certified as follows:

All natural persons who obtained non-purchase money loans from First Horizon Home Loan Corporation on or after April 1, 2003 and who received a Notice of Right to Cancel in the form represented by Exhibit D to the Amended Complaint where (1) the loans were secured by the borrower's Massachusetts residence; (2) the loan was for purposes

Daniel A. Edelman, Edelman, Combs & Latturner, Chicago, IL, for Christopher J. Lillie, Glenroy A. Deane, Ilene Wilgoren–Deane, Laura A. Lillie, Ralph G. McKenna, Plaintiffs.

Heather A. Kolbus, Edelman, Combs, Latturner & Goodwin, LLC, Chicago, IL, for Christopher J. Lillie, Glenroy A. Deane, Ilene Wilgoren–Deane, Laura A. Lillie, Ralph G. McKenna, Plaintiffs.

Christopher M. Lefebvre, Pawtucket, RI, for Ralph G. McKenna, Christopher J. Lillie, Glenroy A. Deane, Ilene Wilgoren–Deane, Laura A. Lillie, Plaintiffs.

other than the initial construction or acquisition of the residence; and (3) all or part of the loan proceeds were used to refinance a loan made by someone other than First Horizon Home Loan Corporation, which prior loan was secured by an interest in the Massachusetts residence.

The class shall not include any person whose legal right to rescind has been extinguished for any reason, including by written waiver of the right to rescind, the sale or transfer of all ownership interests in the property that served as security for the loan transaction, or by foreclosure, personal bankruptcy, or other loan workout settlement.

The declaratory judgment sought shall be a "declaration that any class member who so desires may seek to rescind their transaction."

Report at 27.

Thereafter on November 28, 2005, the defendant moved to clarify the Report so as to exclude from the recommended class persons whose loans had been extinguished by refinancing or payment in full. I referred the motion for clarification to Judge Dein for a further report and recommendation ("Clarification Report"). She issued the Clarification Report on January 6, 2006, recommending that the requested exclusion not be granted. She modified the description of the class, as originally recommended, explicitly to clarify that the exclusion did not apply to persons whose loans had been refinanced or fully repaid.

The defendants objected to both the Report and the Clarification Report. I accept Judge Dein's recommendation and order the certification of the class as she has described it in the Clarification Report. I add the following comments as to one of the issues raised by the defendant in objecting to Judge Dein's recommendation.

One of the arguments originally presented to Judge Dein and now to me by way of objection to her recommendation is that MCCCDA only permits class certification for damages, and not for actions of rescission. Comparing Mass. Gen. Laws ch. 140D § 10 with § 32 of that statute, the defendant argues that "MCCCDA expressly allows for damages classes, but does not similarly provide for rescission classes." Defendant's Rule 72(a) Objections to the Report and Recommendations on Plaintiffs' Motion for Class Certification and on Defendant's Motion for Clarification ("Objection"). Section 10 of MCCCDA, addressing rescission, parallels 15 U.S.C. § 1635, which likewise addresses rescission, (although there are differences in the two statutes not relevant to the present issue). In like manner § 32 of MCCCDA, which addresses damages, parallels 15 U.S.C. § 1640. Section 32 contains a reference to class actions; § 10 does not, just as 15 U.S.C. § 1640 refers to damages and § 1635 does not.

■ The defendant correctly points out that courts construing provisions of MCCCDA may look to TILA and its case law for guidance. Objection at n. 6 (citing *Mayo v. Key Fin. Servs., Inc.*, 424 Mass. 862, 678 N.E.2d 1311, 1313 (1997)). The defendant then argues that Congress amended TILA in 1974 "to permit class actions in damages cases, but it left the separate rescission provision undisturbed, and in later amendments never added class action language to the rescission provision." *Id.* (citing *Jefferson v. Security Pac. Fin. Servs.*, 161 F.R.D. 63, 68 (N.D.Ill.1995)). The argument thus concludes, on the basis of a familiar statutory construction canon, that "[w]here the legislature acted to provide class relief in the provision permitting statutory damages, but not in the provision permitting rescission, this Court must conclude that the

legislature did not intend to permit recision class actions." Objection at 7.

The unspoken premise of the defendant's argument is that Congress acted with a single intention in amending the damages provision in § 1640 in 1974: adding a reference to class actions in § 1640 and omitting such a reference in § 1635, with the purpose of allowing class actions in the one, but not the other. The defendant proceeds from a mistaken premise. Section 1640 does indeed impose liability in damages for lenders failing to provide the notices required by that section of TILA. *See* 15 U.S.C. § 1640(a)(2). Statutory damages for individual claims range from a minimum of $100 to a maximum of $1,000 for consumer actions relating to leases, and from a minimum of $200 to a maximum of $2,000 for credit transactions secured by real property on a dwelling. 15 U.S.C. § 1640(a)(2)(A). The statute specifically limits the damages available in a class action—currently the lesser of $500,000 or one percent of the net worth of the creditor. *Id.* § 1640(a)(2)(B). All that § 1640(a)(2) does, however, is to recognize that class actions exist and limit the damages recoverable in such actions. In referring to class actions in § 1640(a)(2), Congress was not creating them, but addressing what it perceived to be a problem that they might create, namely staggering damages awards against creditors in class actions for what might be technical violations of TILA:

> A problem has arisen in applying [the] minimum liability provisions in class action suits involving millions of consumers. If each member of the class is entitled to a minimum award of $100, a creditor's liability can be enormous

> .    .    .    .    .

> The purpose of the civil penalties section under [TILA] was to provide creditors with a meaningful incentive to comply with the law without relying upon an extensive new bureaucracy. However, the Committee feels this objective can be achieved without subjecting creditors to enormous penalties for violations which do not involve actual damages and may be of a technical nature.

> Putting a reasonable limit on a creditor's maximum class action liability would seem to be in the best interest of both creditors and consumers.

> .    .    .    .    .

> The Committee believes the present ambiguities and uncertainties with respect to class action suits under [TILA] should be clarified .... As the Committee pointed out on similar legislation last year, 'Most truth and lending violations do not involve actual damages and ... some meaningful penalty provisions are therefore needed to insure compliance.'

> Accordingly, the Committee again decided to place an aggregate limitation on a creditor's class action liability for violations not involving actual damages.

S.Rep. No. 93–278 at 14–15 (1973). Thus, Congress, in amending TILA in 1974, was concerned only with limiting damage recoveries, in recognition of how they might affect a creditor in a given case. As the Third Circuit has said:

> Though the statute clearly contemplates class actions, there are no provisions within the law that create a right to bring them ... The 'right' to proceed to a class action, insofar as TILA is concerned, is a procedural one that arises from the Federal Rules of Civil Procedure.

*Johnson v. West Suburban Bank,* 225 F.3d 366, 371 (3d Cir.2000).

To the extent, then, that the defendant argues that Judge Dein misapplied fundamental principles of statutory construction by recommending the certification of a

class under § 1635(a), because that section does not mention class actions, the defendant erroneously compares apples with oranges. The concern that led Congress in 1974 specifically to *limit damages recoverable* in class actions under § 1640 is not implicated in TILA provisions for rescission in § 1635. Congress appears not to have perceived that rescission poses the same economic threat to the credit industry as class action damages.

With these remarks added, I adopt Judge Dein's recommendations in full and grant in part and deny in part the motion for class certification. Accordingly, as Judge Dein has recommended, the following class will be certified:

> All natural persons who obtained non-purchase money loans from First Horizon Home Loan Corporation on or after April 1, 2003 and who received a notice of right to cancel in the form represented by Exhibit D to the Amended Complaint where: (1) the loans were secured by the borrower's Massachusetts residence; (2) the loan was for purposes other than the initial construction or acquisition of the residents; and (3) all or part of the loan proceeds were used to refinance a loan made by someone other than the First Horizon Home Loan Corporation, which prior loan was secured by an interest in the Massachusetts residents.

> The class shall not include any person whose legal right to rescind has been extinguished for any reason, including by written waiver of the right to rescind the sale or transfer of all ownership interest in the property that served as security for the loan transaction, or by foreclosure, personal bankruptcy or other loan workout settlement. However, no person shall be excluded from the class simply because that person has refinanced or paid off the subject loan.

> The declaratory judgment sought shall be a 'declaration that any class member who so desires may seek their transaction.'

SO ORDERED.

## REPORT AND RECOMMENDATION ON PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

DEIN, United States Magistrate Judge.

### I. *INTRODUCTION*

Plaintiffs Ralph G. McKenna, Glenroy A. Deane, Ilene Wilgoren–Deane, Christopher J. Lillie and Laurie A. Lillie have brought this action against defendant First Horizon Home Loan Corporation ("First Horizon") for alleged violations of the Federal Truth in Lending Act, 15 U.S.C. §§ 1601 *et seq.* ("TILA"), the Massachusetts Consumer Credit Cost Disclosure Act, Mass. Gen. Laws ch. 140D ("CCCDA"), and the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A. The plaintiffs claim that First Horizon violated these statutes by issuing confusing and legally defective notices to customers regarding the right to rescind their mortgage loans. Presently before the court is the motion of plaintiffs Ralph McKenna ("McKenna") and Laurie Lillie ("Lillie") for class certification ("Motion") (Docket No. 19). By their Motion, McKenna and Lillie are seeking certification, pursuant to Fed.R.Civ.P. 23(b)(3), of a class consisting of "(a) all natural persons (b) who obtained non-purchase money loans that were secured by their Massachusetts residences, (c) on or after April 1, 2003, (d) for purposes other than the initial construction or acquisition of those residences, (e) where the person received a [Notice of Right to Cancel] in the form represented by *Exhibit D* " to the Amend-

ed Complaint.[1] (Motion at 1). The relief sought for this proposed class is a "declaration that any class member who so desires may rescind their transaction" along with "[s]tatutory damages for all persons who rescind" and attorneys' fees, expenses and costs. (Amended Complaint ("Compl.") (Docket No. 2) at prayers for relief following ¶¶ 41–51).

The issue presented by this case, namely whether a class action is appropriate in an equitable action seeking a declaration of the right to rescind, has divided the courts. As set forth in detail below, this court finds persuasive those cases in which courts have allowed such class actions to proceed against the lender, where the plaintiffs otherwise have satisfied their burden of establishing that class certification is appropriate under Fed.R.Civ.P. 23. However, this court also finds that the proposed class is much too broad in that it includes persons for whom the challenged notice admittedly is not inaccurate, as well as those who are not entitled to rescission as a matter of law. Consequently, this court recommends to the District Judge to whom this case is assigned that the plaintiffs' Motion for Class Certification be ALLOWED IN PART and DENIED IN PART, and that the following class be certified:

> All natural persons who obtained non-purchase money loans from First Horizon Home Loan Corporation on or after April 1, 2003 and who received a Notice of Right to Cancel in the form represented by Exhibit D to the Amended Complaint where: (1) the loans were secured by the borrower's Massachu-

setts residence; (2) the loan was for purposes other than the initial construction or acquisition of the residence; and (3) all or part of the loan proceeds were used to refinance a loan made by someone other than First Horizon Home Loan Corporation, which prior loan was secured by an interest in the Massachusetts residence.

> The class shall not include any person whose legal right to rescind has been extinguished for any reason, including by written waiver of the right to rescind, the sale or transfer of all ownership interests in the property that served as security for the loan transaction, or by foreclosure, personal bankruptcy, or other loan workout settlement.

> The declaratory judgment sought shall be a "declaration that any class member who so desires may seek to rescind their transaction."

## II.  *FACTUAL BACKGROUND*

The following facts are relevant to McKenna's and Lillie's motion for class certification.[2] On June 25, 2003, plaintiff McKenna received a $244,600 mortgage loan from First Horizon. (Compl.¶ 7). The loan was secured by McKenna's home in Braintree, Massachusetts. (*Id.* ¶ 10, Ex. B). McKenna obtained the loan for personal, family or household purposes, including to pay most of a prior mortgage loan from another lender. (*Id.* ¶¶ 8, 9). One of the documents that McKenna received from First Horizon in connection with the June 25 transaction was a Notice of Right to Cancel advising McKenna of

---

1. The plaintiffs have limited their class claims to Massachusetts residents and have waived their request for a broader class which included all borrowers. (*See* Plaintiffs' Reply Memorandum ("Pls.' Reply") (Docket No. 29) at 1).

2. Since Glenroy A. Deane and Ilene Wilgoren–Deane are suing individually, and do not seek to bring their claims on behalf of a class, the facts relating to their loans will not be discussed. (*See* Compl. ¶ 48).

his rescission rights under TILA. (*Id.* ¶ 10, Ex. D).

Similarly, on August 27, 2003, Lillie, along with plaintiff Christopher J. Lillie, obtained a $112,500 mortgage loan from First Horizon that was secured by the Lillies' home in Pittsfield, Massachusetts.[3] (*Id.* ¶ 23, Ex. J). Like McKenna, the Lillies obtained the loan for personal, family or household purposes, and used most of the loan to pay off a prior mortgage loan from another lender. (*Id.* ¶¶ 24, 25). Among the documents that First Horizon furnished to the Lillies in connection with their loan was a Notice of Right to Cancel advising the Lillies of their right to rescind the transaction under TILA. (*Id.* ¶ 26, Ex. L). This form was substantially similar to the one given to McKenna.

The Federal Reserve Board, as part of the regulations implementing TILA, has prepared model forms providing notice of the right to rescind. *See* 12 C.F.R. § 226, Appendix H. There are two proposed forms, one which involves refinancing with a new lender (Form H–8) and one which involves refinancing with the same creditor who issued the original loan (Form H–9). *Pursuant to the federal regulations imple-menting TILA and the Massachusetts regulations implementing the CCCDA, a creditor is not required to use the Federal Reserve Board's model forms as long as the creditor provides a notice of the right to rescind that is "substantially similar" to the Board's forms.* 12 C.F.R. § 226.23(4)(b)(2); 209 C.M.R. § 32.23(2)(b). First Horizon did not use the Federal Reserve Board's model form, but instead provided McKenna and the Lillies with its own form of notice. (Compl.¶¶ 11–14). This form, Exhibit D to

the Amended Complaint, was created after plaintiffs' counsel complained to First Horizon about an earlier version of the document. (*See* Defendant's Opposition to Plaintiffs' Motion for Class Certification ("Def.'s Opp.") (Docket No. 27) at 3). Plaintiffs contend that this new version is confusing as well.

***The Challenged Provision***

Federal Reserve Board Form H–8 is meant for consumers who are entering into loan transactions with a different lender than the one that financed a previous loan secured by the borrower's home. 12 C.F.R. § 226, Appendix H. That form provides in relevant part as follows:

> Notice of Right to Cancel
>
> Your Right to Cancel
>
> You are entering into a transaction that will result in a (mortgage/lien/security interest) (on/in) your home. You have a legal right under federal law to cancel this transaction, without cost, within three business days from whichever of the following events occurs last:
>
> (1) the date of the transaction ...; or
>
> (2) the date you received your Truth in Lending disclosures; or
>
> (3) the date you received this notice of your right to cancel.
>
> If you cancel the transaction, the (mortgage /lien/security interest) is also cancelled. Within 20 calendar days after we receive your notice, we must take the steps necessary to reflect the fact that the (mortgage /lien/security interest) (on/in) your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

---

**3.** On August 27, 2003, the Lillies also obtained a $9,600 home equity line from First Horizon. (Compl.¶ 23). The equity line is not relevant to this case. (*See* Plaintiffs' Memorandum in Support of Their Motion for Class Certification ("Pls.' Mem.") (Docket No. 20) at 2 n. 1).

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 calendar days of your offer, you may keep it without further obligation.

Federal Reserve Board Form H–9 is intended for consumers who are entering into loan transactions with the same creditor who financed the borrower's prior mortgage loan. *Id.* That form provides in relevant part as follows:

Notice of Right to Cancel

Your Right to Cancel

You are entering into a new transaction to increase the amount of credit previously provided to you. Your home is the security for this new transaction. You have a legal right under federal law to cancel this new transaction, without cost, within three business days from whichever of the following events occurs last: (1) the date of this new transaction...; or (2) the date you received your new Truth in Lending disclosures; or (3) the date you received this notice of your right to cancel.

If you cancel this new transaction, it will not affect any amount that you presently owe. Your home is the security for that amount. Within 20 calendar days after we receive your notice of cancellation of this new transaction, we must take the steps necessary to reflect the fact that your home does not secure the increase of credit. We must also return any money you have given to us or anyone

else in connection with this new transaction.

You may keep any money we have given you in this new transaction until we have done the things mentioned above, but you must then offer to return the money at the address below.

If we do not take possession of the money within 20 calendar days of your offer, you may keep it without further obligation.

Plaintiffs challenge First Horizon's notice. The notice applies both to transactions in which First Horizon is refinancing a prior loan from a different lender as well as to transactions in which First Horizon is refinancing a prior loan that First Horizon made to the borrower. (Compl.¶¶ 11, 14). The First Horizon notice states in relevant part:

You are entering into a transaction that will result in a mortgage/deed of trust on your home. You have a legal right under federal law to cancel this transaction, without cost, within three business days from whichever of the following events occur last: (1) the date of the transaction, which is [date]; or (2) the date you received your Truth–in–Lending disclosures; or (3) the date which you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/deed of trust is also canceled. Within 20 calendar days after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/deed of trust on your home has been canceled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

*For new transactions involving us, if you cancel the new transaction, your cancellation will apply only to the in-*

*crease in the amount of credit. It will not affect the amount that you presently owe or the mortgage lien, or security interest we already have on your home.* If you cancel[,] the mortgage, lien, or security interest as it applies to the increased amount is also canceled. Within 20 calendar days after we receive your notice of cancellation of the new transaction, we must take the steps necessary to reflect the fact that the mortgage, lien, or security interest on your home no longer applies to the increase of credit. We must also return any money you have given to us or anyone else in connection with this transaction.

(*Id.*, Exs. D and L, emphasis added).

According to the plaintiffs, First Horizon's notice is legally defective under the disclosure provisions of TILA and the CCCDA[4] because "there is no explanation of what a 'new transaction involving us' might be. The limited right to rescind, applicable to the additional amount of the loan, applies where a loan issued by creditor A is refinanced by creditor A. This distinction is not apparent on First Horizon's form." (Motion ¶ 9). Thus, according to the plaintiffs, the parties harmed are those who were refinancing loans originally made by another lender. (Motion ¶ 14; Compl. ¶¶ 38, 51 (common question is whether First Horizon used the challenged form "in connection with the refinancing of loans made by someone else" and "[w]hether doing so violates TILA")).

The named plaintiffs have notified First Horizon of their wish to rescind their loans. (Compl.¶ 30). As noted above, the relief sought for the proposed class members includes a "declaration that any class member who so desires may rescind the transaction." In connection with a rescission action, First Horizon would be obligated to refund all finance charges paid, including interest and certain closing costs, statutory damages of up to $2,000 per violation, recovery of costs and an award of attorney's fees. 15 U.S.C. §§ 1635, 1640. (Def.'s Opp. (Docket No. 27) at 19 n. 17). First Horizon estimates that the named plaintiffs could be entitled to recover between $15,000 and $25,000, plus attorney's fees, if they were to rescind their loans. (Def.'s Opp. at 19; Declaration of Edward Hyne (Docket No. 27) at ¶¶ 4–5). First Horizon also estimates that between April 2003 and February 2004 (when use of the form ceased), it provided loans in the principal amount of more than $1.7 billion involving 8,908 transactions of Massachusetts properties. (Declaration of Jose Iglesias (Docket No. 27) at ¶ 4). Assuming all these borrowers were eligible to

---

4. TILA § 1635(a) entitled "Disclosure of obligor's right to rescind," provides: "[e]xcept as otherwise provided in this section, in the case of any consumer credit transaction (including opening or increasing the credit limit for an open end credit plan) in which a security interest, including any such interest arising by operation of law, is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later, by notifying the creditor, in accordance with regulations of the [Federal Reserve] Board, of his intention to do so. *The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section. The creditor shall also provide, in accordance with regulations of the Board, appropriate forms for the obligor to exercise his right to rescind any transaction subject to this section.*" 15 U.S.C. § 1635(a) (emphasis added). The Massachusetts CCCDA contains nearly identical language. *See* Mass. Gen. Laws ch. 140D, § 10(a).

and elected to rescind their loans, First Horizon could be liable for approximately $190 million. (*Id.* at ¶ 10; Def.'s Opp. at 13 and n. 13).

Additional facts will be provided below where appropriate.

## III. ANALYSIS

### A. *Standard of Review*

#### 1. *Class Actions*

■ Class certification is governed by Fed.R.Civ.P. 23. "To obtain class certification, the plaintiff must establish the four elements of Rule 23(a) and one of several elements of Rule 23(b)." *Smilow v. Southwestern Bell Mobile Sys., Inc.,* 323 F.3d 32, 38 (1st Cir.2003). Pursuant to Rule 23(a), the plaintiffs must demonstrate:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). If the plaintiffs are able to meet these prerequisites to class certification, they still must satisfy one of the requirements of Rule 23(b). Here, McKenna and Lillie seek class action status pursuant to Rule 23(b)(3), which requires "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). Matters relevant to the court's analysis of the predominance and superiority requirements include:

> (A) the interest of members of the class in individually controlling the prosecu-

tion or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in a particular forum; (D) the difficulties likely to be encountered in the management of a class action.

*Id.* This list of factors is "nonexhaustive." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 615, 117 S.Ct. 2231, 2246, 138 L.Ed.2d 689 (1997).

■ Although the district court's decision on certification is discretionary, the "court must conduct a rigorous analysis of the prerequisites established by Rule 23 before certifying a class." *Smilow,* 323 F.3d at 38. In doing so, the court may find it "necessary to probe behind the pleadings before coming to rest on the certification question." *Gen. Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 160, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982). Thus, in evaluating the plaintiffs' motion to allow the case to proceed as a class action, the court may assess "the allegations in the complaint in light of the entire record presented ... on the motion for class certification." *Swack v. Credit Suisse First Boston,* 230 F.R.D. 250, 257 (D.Mass.2005).

#### 2. *Law Governing Rescission Action*

The plaintiffs are seeking a declaration that class members have the right to rescind their loans. Initially, the plaintiffs sought this relief under TILA and the CCCDA, both of which allow for rescission where a borrower "whose loan is secured by his principal dwelling ... has been denied the requisite disclosures...." *Fidler v. Central Coop. Bank,* 226 B.R. 734, 736 (Bankr.D.Mass.1998) (citing 15 U.S.C. § 1635, Mass. Gen. Laws ch. 140D, § 10). However, at oral argument the parties agreed, correctly, that because the plain-

tiffs are seeking certification of a class of Massachusetts borrowers whose loan transactions were secured by their Massachusetts residences, the CCCDA and not TILA, governs the proposed class members' rescission claims. *See id.* (credit transactions within Massachusetts that are subject to the CCCDA are exempted from various provisions of TILA, including § 1635 regarding the right to rescind). *Accord Desrosiers v. Transamerica Fin. Corp.,* 212 B.R. 716, 722 n. 6 (Bankr. D.Mass.1997) ("a Massachusetts resident can bring a claim for damages under § 1640 of TILA, but cannot rescind a credit transaction under § 1635 of that statute; he or she can pursue that remedy only under CCCDA."); *Belini v. Washington Mutual Bank,* 412 F.3d 17, 22 (1st Cir. 2005) (because of the Massachusetts exemption, disclosure requirements and mechanics of rescission governed by state law, not TILA).

The Massachusetts courts have not directly addressed whether class certification is appropriate where the proposed class members are seeking declaratory rescission relief under the CCCDA. "Because TILA was the model on which CCCDA was based, federal court decisions construing TILA are instructive in construing parallel provisions of CCCDA." *Fidler,* 226 B.R. at 736. *See also Desrosiers,* 212 B.R. at 722 ("Because the provisions of CCCDA parallel those of TILA, CCCDA should be construed in accordance with federal law" (internal quotations and citation omitted)); *Mayo v. Key Fin. Servs., Inc.,* 424 Mass. 862, 864, 678 N.E.2d 1311, 1313 (1997) (since Mass. Gen. Laws ch. 140D was "closely modeled" on TILA, "Federal court decisions are instructive in construing [the] parallel State statutes and State regulations."). The relevant provisions of CCCDA § 10 regarding the right to rescind closely parallel the federal counterpart, TILA § 1635. *Com-*

*pare* Mass. Gen. Laws ch. 140D, § 10 *with* 15 U.S.C. § 1635. Therefore, it is appropriate for this court, in evaluating whether to certify the proposed class in this matter, to rely on federal case law addressing the certification issues under TILA.

### B. *Availability of Class Action Relief*

■ First Horizon's threshold argument which must be addressed is that a class action is not available to the plaintiffs because they are seeking the right to rescind. As First Horizon argues:

> TILA does not allow certification of a class action for rescission. Rescission under TILA is a highly individualized, purely personal remedy, which, like common law rescission, is intended to restore parties to the *status quo ante.* For that reason, and because TILA allows for class actions for damages but not for rescission, the weight of authority holds that rescission classes should not be certified. Contrary authority, including in this District, is wrongly decided and distinguishable.

(Def.'s Opp. (Docket No. 27) at 2). This court disagrees and concludes that the mere fact that a declaration regarding rescission rights is being sought does not preclude the certification of a class as a matter of law.

"The availability of the class action mechanism under TILA is a matter of debate." *Williams v. Empire Funding Corp.,* 183 F.R.D. 428, 435 (E.D.Pa.1998). The First Circuit has not addressed the appropriateness of class actions seeking either actual rescission or a declaratory judgment that the class members are entitled to rescission under TILA. There is a line of federal cases which find that Congress did not intend to allow class-wide rescission actions under TILA. *See, e.g., James v. Home Constr. Co. of Mobile, Inc.,*

621 F.2d 727, 730 (5th Cir.1980); *Murry v. America's Mortgage Banc, Inc.,* Nos. 03 C 5811, 03 C 6186, 2005 WL 1323364, *10–11 (N.D.Ill. May 5, 2005); *Gibbons v. Interbank Funding Group,* 208 F.R.D. 278, 285–86 (N.D.Cal.2002); *Jefferson v. Sec. Pac. Fin. Servs.,* 161 F.R.D. 63, 68–69 (N.D.Ill.1995). These decisions are based primarily on the fact that § 1635(b), which governs rescission claims, does not expressly provide for class actions while § 1640, which governs damages claims, was amended in 1970 to expressly allow for class actions and to cap damage recovery. *See Jefferson,* 161 F.R.D. at 68. While § 1635 was subsequently amended, it did not add a reference to class actions. *Id.* Furthermore, these courts find that rescission is an individual remedy which is designed to restore the status quo ante. According to these courts, "[t]his purpose "would be undone by allowing a class of plaintiffs to rescind their agreements against an individual defendant when the cost of recovery would exceed the harm done by the technical violation." " *Id.* at 69. *See also James,* 621 F.2d at 730–31. This would, in effect, "turn Section 1635(b) into a penal provision." *Id. See also Gibbons,* 208 F.R.D. at 286. Finally, courts denying rescission class certification under TILA have questioned whether the proposed class members have standing if they have not previously demanded rescission. *See Gibbons,* 208 F.R.D. at 285 ("Without any rescission requests, nor subsequent denials by defendants, it is not at all clear that a justiciable controversy exists between the class and defendants."); *Jefferson,* 161 F.R.D. at 69 (lack of allegations "that the purported class members have gone through the steps of rescission with [the creditor or] have requested or even desire rescission ... indicates that the purported class members lack standing.").

These arguments have been rejected by a second line of cases, including two recent cases in this district, where the courts have certified class actions or determined that class status is appropriate in cases in which the plaintiffs were seeking a declaration of the right to rescind under TILA. *See, e.g., Rodrigues v. Members Mortgage Co., Inc.,* 226 F.R.D. 147, 153 (D.Mass. 2005); *Latham v. Residential Loan Ctrs. of America, Inc.,* No. 03 C 7094, 2004 WL 1093315 *3 (N.D.Ill. May 6, 2004); *McIntosh v. Irwin Union Bank & Trust Co.,* 215 F.R.D. 26, 33 (D.Mass.2003); *Williams v. Empire Funding Corp.,* 183 F.R.D. 428, 435–36 (E.D.Pa.1998). This court finds this second line of cases persuasive.

As an initial matter, "there is nothing in the language of TILA which precludes the use of the class action mechanism provided by Rule 23 to obtain a judicial declaration whether an infirmity in the documents, common to all members of the class, entitles each member of the class individually to seek rescission." *Rodrigues,* 226 F.R.D. at 153 (quoting *Williams,* 183 F.R.D. at 436). This court does not find it significant that Congress expressly referred to class actions in connection with setting a damages cap, but did not make a comparable amendment to the rescission statute. It is just as likely that Congress did not intend to in any way limit rescission claims which are designed to put the consumer back in the same position as before the inaccurate information was provided.

Similarly, this court is not persuaded that by allowing class actions seeking a declaration that consumers have the right to seek rescission improperly converts § 1635 into a penal provision. First of all, as Judge Young held in *McIntosh,* "[t]o achieve its remedial purpose, TILA *is* penal in nature and builds in incentives for litigation to protect classes of plaintiffs who, individually injured, would never sue to recover modest damages." *McIntosh,*

215 F.R.D. at 33 (emphasis in original). Moreover, in view of the fact that the class has been limited to only those who were potentially injured, and the fact that the class plaintiffs are only seeking declaratory relief, this court does not find the defendant's fear of a catastrophic penalty to be persuasive. *See id.* As the *Williams* court held:

> Plaintiffs only seek a declaration that the notices of rescission . . . violate TILA, and thus that each member of the class is entitled to seek rescission. Should the Court declare that, indeed, plaintiffs are entitled to seek rescission because of certain infirmities in the TILA disclosure documents, then each class member, individually, and not as a member of the class, would have the option to exercise his or her right to seek rescission. As to any member of the class who triggered the statutory right to rescission, the defendants would have, in turn, the opportunity to exercise their rights to cure under TILA.

*Williams*, 183 F.R.D. at 435–36. *Accord McIntosh*, 215 F.R.D. at 33; *Latham*, 2004 WL 1093315, at *3; *Rodrigues*, 226 F.R.D. at 153. *But see Gibbons*, 208 F.R.D. at 285 (rejecting distinction between class action suit seeking rescission and one seeking declaration of right to rescind).

■■■ Finally, this court does not agree that the potential class members lack standing to maintain an action if they did not previously request rescission. The Supreme Court has long recognized that "[t]he actual or threatened injury required by Art. III may exist solely by virtue of

statutes creating legal rights, the invasion of which creates standing . . . ." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373, 102 S.Ct. 1114, 1121, 71 L.Ed.2d 214 (1982) (punctuation in original) (quotations and citations omitted). Section 10 of the CCCDA establishes an enforceable right to the clear and conspicuous disclosure of the right to rescind. *See White v. Arlen Realty & Dev. Corp.*, 540 F.2d 645, 649 (4th Cir.1975) (Congress, in the disclosure requirements of TILA, "gave the debtor a right to specific information and therefore defined 'injury in fact' as the failure to disclose such information."). Therefore, the proposed class members who received the allegedly unlawful notice have standing to sue for improper disclosure under the CCCDA.[5] In any event, "the filing of the complaint constitutes statutory notice of rescission" pursuant to TILA and the CCCDA. *Taylor v. Domestic Remodeling, Inc.*, 97 F.3d 96, 100 (5th Cir.1996); *McIntosh*, 215 F.R.D. at 32, and cases cited.

For these reasons, a class action seeking a declaration of rights to rescind is not precluded as a matter of law. Consequently, this analysis will now turn to the requirements of Rule 23.

### C. *Application of Rule 23 to the Record*

#### 1. *Rule 23(b)(3)*

First Horizon's principal arguments against class certification relate to the predominance and superiority requirements of Fed.R.Civ.P. 23(b)(3), so these elements will be addressed first.

---

**5.** The case of *Highsmith v. Chrysler Credit Corp.*, 18 F.3d 434 (7th Cir.1994), on which First Horizon relies to argue against standing, in fact supports standing in this case. In *Highsmith*, the court determined that under the Consumer Leasing Act, the failure to disclose any portion of the formula that a lessor uses to calculate an early termination charge will give rise to a technical violation of the statute's disclosure provision. 18 F.3d at 439. Consequently, by claiming that the lessor did not disclose an unearned finance charge reduction as part of its formula, the plaintiff was able to state a claim for relief. *Id.*

## Predominance

The plaintiffs are challenging the language of a form document, and assert that First Horizon violated the CCCDA because its Notice of Right to Cancel contained confusing language regarding the scope of the plaintiffs' rescission rights. The language appears on the face of the Notice. The fundamental issues in this case include whether First Horizon had a standard practice of using the challenged form to refinance loans made by another lender and whether the description in the form "clearly and conspicuously" discloses the borrower's rescission rights, as required by the CCCDA. Thus, "[t]he common factual basis is found in the terms of the [Notice], which are identical for all class members." *Smilow*, 323 F.3d at 39. Similarly, the common questions of law include whether the Notice was misleading and violates the CCCDA. Under such circumstances, common issues predominate and the plaintiffs have satisfied this prong of Rule 23(b)(3). *See also Rodrigues*, 226 F.R.D. at 153 (plaintiffs' claim that notice of right to cancel misstated the scope of the plaintiffs' rescission rights satisfied the predominance requirement of Rule 23).

First Horizon argues that the predominance requirement cannot be met because the determination as to whether the Notice of Right to Cancel was clear and conspicuous under the CCCDA necessitates "close scrutiny of the totality of the circumstances in each transaction" to determine whether the individual class members were in fact confused by the Notice. (Def.'s Mem. (Docket No. 27) at 15–16). First Horizon also argues that its defenses to individual claims, such as defenses that certain borrowers have paid off their loans, have waived their rescission rights, or have sold or transferred all ownership interests in the property that serves as security for the transaction, will require an evaluation of the particular circumstances of each loan transaction. (*See id.* at 16–17).

It is not clear whether the events surrounding the circumstances of each closing where the Notice was signed will be relevant to the instant litigation. It has been held that "[a]n objective standard is used to determine violations of the TILA, based on the representations contained in the relevant disclosure documents; it is unnecessary to inquire as to the subjective deception or misunderstanding of particular consumers." *Zamarippa v. Cy's Car Sales, Inc.*, 674 F.2d 877, 879 (11th Cir. 1982). That is because the court "cannot allow" lenders "to evade the requirements of the TILA ... on the fortuity that some consumers are better able to evaluate the information than others." *Id.* (fact that consumers did not read, speak or understand English did not protect seller who provided inadequate disclosure statements). *See also Smilow*, 323 F.3d at 39 n. 7 (defendants "wisely withdrew the argument that oral representations made by sales representatives to potential customers would vary the contract terms by customer and so defeat commonality" where contract contained integration clause).[6]

---

**6.** At oral argument, First Horizon relied on the case of *Mechanics Nat'l Bank of Worcester v. Killeen*, 377 Mass. 100, 384 N.E.2d 1231 (1979) to support its argument that the borrower's subjective understanding of the creditor's notice is relevant to determine whether the notice violated the CCCDA. In *Mechanics*, the court found that the absence of a bank's name from one form, as required by law, was "insignificant and unintended" and did not allow for penalties based on a failure to disclose information since the information had otherwise been disclosed. 384 N.E.2d at 1238. The case does not address the situation where the consumer's fundamental right to rescind was confusing. Nor does it specifically address whether the legality of a rescission notice under the CCCDA must be evaluated using an objective or a subjective standard.

However, assuming, *arguendo*, that the specific circumstances are relevant, class-wide treatment is still warranted. There is, at minimum, a common legal question which would warrant class certification—namely, "whether the subjective understanding of the borrowers with respect to their rights negates a prima facie TILA violation." *Rodrigues*, 226 F.R.D. at 152.

■ The plaintiffs have alleged, and asserted as a common question of fact, that First Horizon had a standard closing practice using the challenged form in connection with the refinancing of mortgage loans which had been made by a different lender. (Compl.¶¶ 38, 51). If First Horizon demonstrates that this was not its practice, and that the individual circumstances are relevant, it may then move to decertify the class. *Rodrigues*, 226 F.R.D. at 152. *But see Smilow*, 323 F.3d at 39–40 (fact that, as defendant contends, it may be able to prove that individual plaintiffs waived their claims does not defeat class certification— "Courts traditionally have been reluctant to deny class action status under Rule 23(b)(3) simply because affirmative defenses may be available against individual members"). The standard at that time would still be whether common issues predominate. Rule 23(b)(3) does not require that "all issues be common to the class." *Smilow*, 323 F.3d at 39.

### Superiority

This court also finds that a class action is a superior means of adjudicating the controversy. One of the purposes of Rule 23 is to "achieve economies of time, effort, and expense, and promote ... uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615, 117 S.Ct. at 2246 (quotations and citation omitted). In light of the common issues in this case, class certification will further these goals. Additionally, class certification will advance both the fundamental policy of Rule 23(b)(3) and the remedial purpose of the CCCDA "to protect classes of plaintiffs who, individually injured, would never sue to recover modest damages." *McIntosh*, 215 F.R.D. at 33. *See also Smilow*, 323 F.3d at 41 ("The core purpose of Rule 23(b)(3) is to vindicate the claims of consumers and other groups of people whose individual claims would be too small to warrant litigation."). Although, as First Horizon contends, some borrowers may be entitled to as much as $25,000 or more if they are allowed to rescind their transactions, this court is not convinced that most consumers, when faced with the cost of retaining counsel, the effort required to pursue litigation, and the risk of failing to achieve a desirable outcome, would consider it worthwhile to pursue these claims individually.[7]

The court's conclusion regarding superiority is not altered by First Horizon's argument that the class would be unmanageable due to the effort that would be required to identify class members and the complexity of administering the rescission remedy, which "frequently requires court supervision and modification of the rescission procedures in order to protect lenders' interests and to do equity." (Def.'s Opp. at 17–18). Since the parties filed their briefs, the plaintiffs have limited the proposed class to Massachusetts residents, which has reduced substantially

---

7. The court is aware of plaintiffs' counsel's letter advertising a client's $50,000 savings from the rescission of his mortgage loan, as well as the three individual rescission demands from Rhode Island consumers that followed. *See* First Horizon's Supplemental Memorandum in Opposition to Plaintiffs' Motion for Class Certification (Docket No. 32), Exs. A & B. However, this information does not indicate whether the potential plaintiffs would be willing to proceed on an individual basis.

the number of loans at issue. Additionally, the plaintiffs have volunteered to review First Horizon's files and identify class members if the process is too burdensome for the defendant. Furthermore, notwithstanding First Horizon's conclusory argument to the contrary, there is no evidence that the rescission remedy would be so unmanageable that it should justify the denial of class certification. "The individuation of damages in consumer class actions is rarely determinative under Rule 23(b)(3)." *Smilow*, 323 F.3d at 40. Any potential difficulties with the administration of a remedy are outweighed by the efficiencies of litigating the plaintiffs' claims as a class action.

Furthermore, although First Horizon could face significant liability if the proposed class members are able to establish a right to rescind, that possibility must be balanced against the policy considerations underlying Rule 23(b)(3) and the CCCDA. If First Horizon's notice is, in fact, defective, a class action is the most efficient means of enabling consumers to vindicate their rights under the CCCDA. The customers, in fact, were supposed to have the right to rescind under the statute—it is not a right being created by this litigation. Whether the individual plaintiffs still actually seek to rescind remains an open question. Accordingly, this court concludes that a class action is a superior means of adjudicating the present controversy.

### 2. *Requirements of Rule 23(a)*

#### *Numerosity*

■ This court also concludes that the plaintiffs have met the four prerequisites of Fed.R.Civ.P. 23(a). The first of those requirements "is satisfied when the class is 'so numerous that joinder of all members is impracticable.'" *Swack*, 230 F.R.D. at 258 (quoting Fed.R.Civ.P. 23(a)(1)). "Other courts in this district have noted that a 40 person class is 'generally found to establish numerosity.'" *McLaughlin v. Lib-*

*erty Mut. Ins. Co.*, 224 F.R.D. 304, 307 (D.Mass.2004) (quoting *In re Relafen Antitrust Litig.*, 218 F.R.D. 337, 342 (D.Mass. 2003)). First Horizon does not dispute, and the record supports the plaintiffs' argument that the size of the proposed class is sufficient. Although the plaintiffs have not specified the number of class members, "district courts may draw reasonable inferences from the facts presented to find the requisite numerosity." *McCuin v. Sec'y of Health & Human Servs.*, 817 F.2d 161, 167 (1st Cir.1987). In view of the large number of loan transactions and the fact that the plaintiffs are challenging the use of a form, it may be inferred that the proposed class includes well over forty individuals and is sufficiently numerous to satisfy Rule 23(a).

#### *Commonality*

The second, "commonality" prong of "Rule 23(a)(2) requires that questions of law or fact be shared by the prospective class, but does not require that every question be common." *McLaughlin*, 224 F.R.D. at 309. In fact, "[b]ecause '[a] *single* common legal or factual issue can suffice' to satisfy the 23(a)(2) requirement, 'the commonality requirement ordinarily is easily met.'" *Swack*, 230 F.R.D. at 259 (quoting *Payne v. Goodyear Tire & Rubber Co.*, 216 F.R.D. 21, 25 (D.Mass.2003)). "Commonality and predominance are closely related" and, as a general statement, "a finding of one will satisfy the other." *Jefferson*, 161 F.R.D. at 68 n. 13. "Similarly, commonality and typicality are closely related and a finding of one generally compels a finding of the other." *Id.* Here, for many of the reasons described above, the prospective class shares common questions of law or fact. For example, one of the significant factual questions raised by the plaintiffs' claims is whether First Horizon had a practice of issuing to its customers the form Notice of Right to Cancel, exemplified by *Exhibit D* to the

Amended Complaint, in connection with the refinancing of loans made by another lender. This question is common to the proposed class members. Common legal questions include whether the Notice of Right to Cancel that First Horizon issued violates the CCCDA and if so, whether that constitutes a violation of Mass. Gen. Laws ch. 93A. These questions establish the existence of commonality required by Rule 23.

### Typicality

The third prong of Rule 23(a) requires that the lead plaintiffs' claims or defenses are "typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). "The central inquiry in determining whether a proposed class has 'typicality' is whether the class representatives' claims have the same essential characteristics as the claims of the other members of the class." McLaughlin, 224 F.R.D. at 310 (quotations and citations omitted). The requirement is satisfied where the plaintiffs "show that their claims arise from the same course of conduct that gave rise to the claims of the absent [class] members." Id. (quotations and citation omitted). See also Rodrigues, 226 F.R.D. at 151. In this case, McKenna's and Lillie's claims arise from First Horizon's and its agents' use of the challenged forms at loan closings. This is the same course of conduct from which the claims of the absent Massachusetts class members arise. Accordingly, this court finds that McKenna's and Lillie's claims are typical of the claims of the class.

### Adequacy of Representation

The fourth and final prong of Rule 23(a) requires that the named plaintiffs "will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). This "adequacy" requirement focuses on "the named plaintiffs' ability to prosecute the action vigorously through qualified counsel

and their lack of conflicting interest with unnamed class members." McLaughlin, 224 F.R.D. at 310 (quotations and citations omitted). See also Swack, 230 F.R.D. at 265. Plaintiffs' counsel in this matter have significant experience in consumer class representation, see Pls.' Mem., Appendix C, and the court is satisfied that they are qualified to vigorously prosecute this case. Additionally, the plaintiffs are seeking a declaration of the right to rescind, which would allow both the named plaintiffs and the absent class members to cancel their loan transactions with the defendant only if they choose to do so. Therefore, the plaintiffs have no conflict of interest with the unnamed class members. See Rodrigues, 226 F.R.D. at 151 ("The fact that [plaintiff], if she prevails, may rescind her loan while other plaintiffs may not creates no conflict because all she is seeking in this action is a declaration of the right to rescind.").

### IV. CONCLUSION

■ This court finds that the plaintiffs have satisfied all of the prerequisites to class certification set forth in Fed.R.Civ.P. 23(a), and that they also have met the requirements of Fed.R.Civ.P. 23(b)(3). However, the class sought to be certified is overly-broad. Therefore, this court recommends to the district judge to whom this case is assigned that the plaintiffs' Motion for Class Certification (Docket No. 19) be ALLOWED IN PART and DENIED IN PART,[8] and that the following class be certified:

All natural persons who obtained non-purchase money loans from First Horizon Home Loan Corporation on or after April 1, 2003 and who received a Notice of Right to Cancel in the form represented by Exhibit D to the Amended Complaint where: (1) the loans were secured by the borrower's Massachu-

8. The parties are hereby advised that under the provisions of Fed.R.Civ.P. 72 any party

setts residence; (2) the loan was for purposes other than the initial construction or acquisition of the residence; and (3) all or part of the loan proceeds were used to refinance a loan made by someone other than First Horizon Home Loan Corporation, which prior loan was secured by an interest in the Massachusetts residence.

The class shall not include any person whose legal right to rescind has been extinguished for any reason, including by written waiver of the right to rescind, the sale or transfer of all ownership interests in the property that served as security for the loan transaction, or by foreclosure, personal bankruptcy, or other loan workout settlement.

The declaratory judgment sought shall be a "declaration that any class member who so desires may seek to rescind their transaction."

November 10, 2005.

### REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO CLARIFY REPORT AND RECOMMENDATION ON PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

DEIN, United States Magistrate Judge.

### I. INTRODUCTION

In this action, plaintiffs Ralph G. McKenna, Glenroy A. Deane, Ilene Wilgoren–Deane, Christopher J. Lillie and Laurie A. Lillie claim that the defendant, First Horizon Home Loan Corporation ("First Horizon"), violated the Federal Truth in Lending Act, 15 U.S.C. §§ 1601 *et seq.* ("TILA"), the Massachusetts Consumer Credit Cost Disclosure Act, Mass. Gen. Laws ch. 140D ("CCCDA"), and the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A, by issuing confusing and legally defective notices to customers regarding the right to rescind their mortgage loans. On November 10, 2005, this court issued a "Report and Recommendation on Plaintiffs' Motion for Class Certification" ("R & R") (Docket No. 36) in which it recommended that the motion of plaintiffs Ralph McKenna and Laurie Lillie for class certification be allowed in part and denied in part, and that the following class be certified:

All natural persons who obtained non-purchase money loans from First Horizon Home Loan Corporation on or after April 1, 2003 and who received a Notice of Right to Cancel in the form represented by Exhibit D to the Amended Complaint where: (1) the loans were secured by the borrower's Massachusetts residence; (2) the loan was for purposes other than the initial construction or acquisition of the residence; and (3) all or part of the loan proceeds were

---

who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review. *See Keating v. Sec'y of Health & Human Servs.,* 848 F.2d 271, 275 (1st Cir.1988); *United States v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir.1986); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603, 604–605 (1st Cir.1980); *United States v. Vega,* 678 F.2d 376, 378–79 (1st Cir.1982); *Scott v. Schweiker,* 702 F.2d 13, 14 (1st Cir.1983); *see also Thomas v. Arn,* 474 U.S. 140, 153–54, 106 S.Ct. 466, 474, 88 L.Ed.2d 435 (1985). *Accord Phinney v. Wentworth Douglas Hosp.,* 199 F.3d 1, 3–4 (1st Cir.1999); *Henley Drilling Co. v. McGee,* 36 F.3d 143, 150–51 (1st Cir.1994); *Santiago v. Canon U.S.A., Inc.,* 138 F.3d 1, 4 (1st Cir. 1998).

used to refinance a loan made by someone other than First Horizon Home Loan Corporation, which prior loan was secured by an interest in the Massachusetts residence.

*The class shall not include any person whose legal right to rescind has been extinguished for any reason,* including by written waiver of the right to rescind, the sale or transfer of all ownership interests in the property that served as security for the loan transaction, or by foreclosure, personal bankruptcy, or other loan workout settlement.

The declaratory judgment sought shall be a "declaration that any class member who so desires may seek to rescind their transaction."

(emphasis added).

■ Presently before the court is First Horizon's "Motion to Clarify the Report and Recommendation on Plaintiffs' Motion for Class Certification" (Docket No. 41). By its motion, First Horizon requests that this court clarify whether its exclusion from the class of "any person whose legal right to rescind has been extinguished for any reason" includes persons whose loans from First Horizon have been refinanced or paid off. Additionally, First Horizon argues that to the extent that the court has not made this determination already, the R & R should be clarified to state explicitly that among those persons "whose legal right to rescind has been extinguished for any reason" are persons who

refinanced or paid off the subject loan from First Horizon.

When this court issued its original R & R, it was of the belief that the situation of individual borrowers should be addressed after it was determined who, in fact, responded to the class notices. Since the issue whether refinancing or paying off a loan extinguishes the right to rescind is unsettled in this jurisdiction, the status of these borrowers as class members was not specifically addressed. In light of the request for clarification, however, this court will consider the issue.

Upon consideration of the parties' arguments, and for the reasons detailed herein, this court concludes that the refinancing or payoff of a loan does not, as a matter of law, extinguish the borrower's legal right to rescind. Therefore, First Horizon's request to clarify the R & R to exclude from the class those persons whose loans have been refinanced or paid off is DENIED. The November 10, 2005 R & R shall be amended to clarify that no person shall be excluded from the class simply because that person has refinanced or paid off the subject loan.

## II. ANALYSIS

### State Law Interpreting the CCCDA

The proposed class members' rescission claims are governed by the Massachusetts CCCDA.[9] *See* R & R at 11–12. Section

---

9. There is no support for the plaintiffs' argument that federal law, rather than state law, controls in this instance. The case law is clear that credit transactions within Massachusetts that are subject to the CCCDA are exempted from various provisions of TILA, including § 1635 regarding the right to rescind. *See Fidler v. Central Coop. Bank,* 226 B.R. 734, 736 (Bankr.D.Mass.1998). Accordingly, where, as here, the subject loans were secured by the borrowers' Massachusetts residences, the CCCDA, and not TILA, governs

the proposed class members' rescission claims. *Id.; see also Belini v. Washington Mutual Bank,* 412 F.3d 17, 26–27 (1st Cir. 2005) (because of the Massachusetts exemption, disclosure requirements and mechanics of rescission are governed by state law, not TILA); *Desrosiers v. Transamerica Fin. Corp.,* 212 B.R. 716, 722 n. 6 (Bankr.D.Mass.1997) ("a Massachusetts resident can bring a claim for damages under § 1640 of TILA, but cannot rescind a credit transaction under § 1635

10 of the CCCDA establishes the right to rescind a mortgage loan transaction like those at issue in this case, and requires the creditor to provide notice to customers regarding the right to rescind. *See* Mass. Gen. Laws ch. 140D, § 10(a). Section 10 also provides, in relevant part, that:

> [a]n obligor's right of rescission shall expire four years after the date of consummation of the transaction or upon sale of the property, whichever occurs first, notwithstanding that the information and forms required under this section or any other disclosures required under this chapter have not been delivered to the obligor . . . .

*Id.* at § 10(f).[10] However, nothing in section 10 or in any other provision of the statute addresses whether the right of rescission expires upon refinancing or payoff of the subject loan.

The Massachusetts courts have not directly addressed whether a borrower's legal right to rescind under the CCCDA is extinguished when the loan is refinanced or otherwise paid off. Nevertheless, First Horizon argues that the Massachusetts Supreme Judicial Court ("SJC") conclusively decided the issue in the case of *Shepard v. Fin. Assoc. of Auburn, Inc.*, 366 Mass. 182, 316 N.E.2d 597 (1974). This court finds that *Shepard* did not reach the question presented here, and is not determinative.

In *Shepard*, the plaintiff entered into three separate loans secured by mortgages on a home that she owned. 366 Mass. at 183, 316 N.E.2d at 598. The third loan was issued in the form of a consolidated loan, which operated to discharge the prior two loans. *Id.* at 187, 316 N.E.2d at 600.

The plaintiff purported to rescind the transactions in a letter that was received by the defendant creditor on May 7, 1971. *Id.* at 189, 316 N.E.2d at 601. On that same day, the plaintiff filed her lawsuit, claiming that the loan transactions were void because "they were properly rescinded under G.L. c. 140C," the predecessor to Mass. Gen. Laws ch. 140D. *Id.* at 188–89, 316 N.E.2d at 601. The trial court found that the property at issue was not the plaintiff's principal residence, and that, as a result, the plaintiff was not entitled to notices under Mass. Gen. Laws ch. 140C, and could not rescind her loan. *Id.* at 184–85, 316 N.E.2d at 599. The SJC reversed on the grounds that the house was, in fact, the plaintiff's principal residence and that she was therefore entitled to rescission. *Id.*

After concluding that the property at issue was the plaintiff's principal residence, the SJC ruled that the plaintiff's May 7, 1971 rescission was effective under ch. 140C, § 8 pertaining to the right to rescind, and that the parties should be ordered to follow the statutory procedures set forth in ch. 140C, § 8(d) for effectuating the rescission of a loan transaction. *Id.* at 194–95, 316 N.E.2d at 604–05. However, the issue of whether the plaintiff retained a right to rescind the first two loans under § 8, although they had been discharged by the third loan, was not presented to the court and was not addressed by the court in its opinion.

The *Shepard* court did address whether the defendant's failure to make the required disclosures entitled the plaintiff to damages, pursuant to § 10(b), for each of

---

of that statute; he or she can pursue that remedy only under CCCDA.").

**10.** Similarly, the regulations implementing Mass. Gen. Laws ch. 140D, § 10 provide in relevant part that "[i]f the required notice or material disclosures are not delivered, the

right to rescind shall expire four years after consummation, upon transfer of all the consumer's interest in the property, or upon sale of the property, whichever occurs first." 209 Code Mass. Regs. § 32.23 (2005).

the three transactions. *Id.* at 195, 316 N.E.2d at 605. Mass. Gen. Laws ch. 140C, § 10, which has been superseded by Mass. Gen. Laws ch. 140D, § 32 since *Shepard* was decided, made "the creditor liable to the customer, after any failure to make a required disclosure, in an amount equal to twice the finance charges, but neither less than $100 nor more than $1000."[11] *Id.* The plaintiff in *Shepard* was seeking $3,000, "the maximum sum for each of the three transactions[.]" *Id.* The court ruled that "such an award would be inappropriate." *Id.* In particular, the court stated: "[t]wo of the notes were discharged long before this litigation began, and without any payment ever having been made on either of them. We do not believe the statute contemplated civil liability to ensue from such a transaction, whatever the defects in the notice." *Id.*

First Horizon argues that the court's language rejecting civil liability for the discharged notes resolves the present issue in its favor. However, it is clear from the context of the statement that the *Shepard* court was construing the damages provision of the CCCDA, and not the rescission provision. The court's reading of the statute as not contemplating civil damages liability arising out of a loan that has been discharged says nothing regarding the right to seek rescission of such a loan under the separate rescission provision of the CCCDA. Moreover, the SJC was clearly making a case-specific ruling—under the unique facts of the case before it,[12] which included notes which had long been discharged without any payment having been made on any of them. The Court was not making any explicit ruling of statutory interpretation. Because no other Massachusetts court has addressed the issue, the question of whether the right to rescind survives if the loan is refinanced or paid off remains unsettled under Massachusetts law.[13]

### Federal Law Interpreting TILA

The relevant provisions of the CCCDA § 10 regarding the right to rescind closely parallel the federal counterpart, TILA § 1635. *Compare* Mass. Gen. Laws ch. 140D, § 10 *with* 15 U.S.C. § 1635. Therefore, it is appropriate to look to federal law interpreting TILA for further guidance. *See Fidler v. Cent. Coop. Bank*, 226 B.R. 734, 736 (Bankr.D.Mass.1998) ("Because

---

**11.** The damages provisions of the current version of the CCCDA, like Mass. Gen. Laws ch. 140C, § 10(b), make creditors that fail to provide the necessary disclosures liable to the consumer for "twice the amount of any finance charge in connection with the transaction, except that the liability under this clause shall not be less than one hundred dollars nor greater than one thousand dollars ...." Mass. Gen. Laws ch. 140D, § 32(a)(2).

**12.** *Shepard* involved a unique set of facts where a mentally troubled borrower traveled around the country, and periodically called her mortgage broker and/or a lawyer because she needed money. The money was provided by way of loans secured by the mortgages.

**13.** The court also is not persuaded by First Horizon's reliance on the Massachusetts Practice Series to support its position that the right of rescission is lost when the consumer pays off the mortgage loan. *See* Def.'s Mem. at 4 (citing 35A Mass. Practice § 14:19 (West Supp.2004) which states that "[i]f the consumer pays off the mortgage loan before receiving all material truth in lending disclosures from the lender, the right of rescission is lost for the obvious reason that the loan no longer exists so there is nothing to rescind."). The section of the Massachusetts Practice Series on which First Horizon relies, and which is not controlling in any event, is based on federal law rather than on state law construing the CCCDA. Moreover, it cites as support only one federal case from the Northern District of Illinois. As discussed *infra,* a number of federal courts have addressed the question of whether the right of rescission is extinguished when the loan is paid off, and the results are divided.

TILA was the model on which CCCDA was based, federal court decisions construing TILA are instructive in construing parallel provisions of CCCDA."); *Desrosiers v. Transamerica Fin. Corp.*, 212 B.R. 716, 722 ("Because the provisions of the CCCDA parallel those of TILA, CCCDA should be construed in accordance with federal law" (internal quotations and citation omitted)); *Mayo v. Key Fin. Servs., Inc.*, 424 Mass. 862, 864, 678 N.E.2d 1311, 1313 (1997) (since Mass. Gen. Laws ch. 140D was "closely modeled" on TILA, "Federal court decisions are instructive in construing parallel State statutes and State regulations.").

"The First Circuit has not addressed the issue of whether a borrower has a right to rescind once the mortgage has been paid off, and the case law is split on the subject." *McIntosh v. Irwin Union Bank & Trust Co.*, 215 F.R.D. 26, 30 (D.Mass. 2003), and cases cited. Those courts that have found that the right of rescission is extinguished upon payoff have reasoned that once the loan has been paid, there is nothing left to rescind. *See, e.g., Mijo v. Avco Fin. Servs. of Hawaii, Inc.*, No. 90–16688, 1991 WL 126660 at *1 (9th Cir. July 1, 1991) (unpublished opinion) ("When the [plaintiffs] refinanced their loan prior to attempting to rescind the loan, their right of rescission under 15 U.S.C. § 1635(f) was extinguished. Simply stated, the loan cannot be rescinded because there is nothing to rescind." (internal citation omitted)); *King v. California*, 784 F.2d 910, 913 (9th Cir.1986) (refinanced loan cannot be rescinded "because there is nothing left to rescind."); *Jenkins v. Mercantile Mortgage Co.*, 231 F.Supp.2d 737, 745–46 (N.D.Ill.2002) (no rescission claim where mortgage has been satisfied and no longer exists); *Coleman v. Equicredit Corp. of Am.*, No. 01 C 2130, 2002 WL 88750 at *2 (N.D.Ill. Jan.22, 2002) (unpublished opinion) (nothing left to rescind where plain-

tiffs refinanced their loan, paid off the lender, and had their mortgage released). That position has been rejected by another line of cases, including one in this district, in which the courts have determined that refinancing does not bar a suit for rescission. *See, e.g., Duren v. First Gov't Mortgage & Investors Corp.*, 221 F.3d 195, 2000 WL 816042 at *2 (D.C.Cir. June 7, 2000) (unpublished opinion); *Payton v. New Century Mortgage Corp.*, Nos. 03 C 333, 03 C 703, 2003 WL 22349118 at *2 (N.D.Ill. Oct.14, 2003) (relying on *McIntosh* analysis); *McIntosh*, 215 F.R.D. at 30–31; *Pulphus v. Sullivan*, No. 02 C 5794, 2003 WL 1964333 at *17 (Apr. 28, 2003); *Wright v. Mid–Penn Consumer Discount Co.*, 127 B.R. 766, 770–71 (Bankr.E.D.Pa.1991). As detailed more fully below, these courts have determined that to hold otherwise would be "at odds with TILA and its regulations." *See, e.g., Pulphus*, 2003 WL 1964333 at *17; *Payton*, 2003 WL 22349118 at *2. This court finds the analysis of those cases concluding that refinancing does not preclude rescission to be persuasive. Therefore, this court declines to exclude from the recommended class those persons whose loans have been refinanced or otherwise paid off.

### The Language of TILA and its Regulations

As an initial matter, the conclusion that rescission is not barred by refinancing is supported by the language of the statute and its implementing regulations. TILA and "the implementing regulations of TILA never state that paying off a loan in full cuts off unexpired rescission rights." *McIntosh*, 215 F.R.D. at 31; *Wright*, 127 B.R. at 770. Instead, TILA and its regulations provide that if the material disclosures are not delivered, the customer's right to rescind shall expire three years after consummation of the loan transaction, upon the customer's transfer of all of

his interest in the property in which security is taken, or upon sale of the property, whichever occurs first. *See* 15 U.S.C. § 1635(f); 12 C.F.R. § 226.23(a)(3). The CCCDA and its implementing regulations are nearly identical, the only difference being that the right to rescind remains available for four years after consummation if the property is not transferred or sold first. *See* Mass. Gen. Laws ch. 140D, § 10(f); 209 Code Mass. Regs. § 32.23 (2005). "The fact that the [statute and its] regulations set forth an enumerated list of events that cut off rescission rights—and do not include payment in full of the loan as one of those events—speaks against [First Horizon's] argument." *McIntosh*, 215 F.R.D. at 31.[14] *See also Wright*, 127 B.R. at 770 (relying on the language of the statute as well as "a line of cases holding that liability from TILA disclosure violations are not vitiated by a rescission of the errant loan transaction").

### The Right to Rescind After Payoff is Consistent with the Structure and Policies of the CCCDA

This court also concludes that recognizing the right to rescind after a payoff is consistent with the structure and the policies of the CCCDA, and rejects First Horizon's contention to the contrary. *See* Def. Mem. at 6–8. "It might make sense to read loan payment into the list [of events that extinguish the right to rescind] if elimination of the security interest were the only effect of rescission. But it is not." *Pulphus*, 2003 WL 1964333, *17 (construing TILA). According to the CCCDA, a lender that has been served with a notice of rescission not only must terminate the security interest, but also must "return to the obligor any money or property given as earnest money, downpayment, or otherwise . . . ." Mass. Gen. Laws ch. 140D, § 10(b). Therefore, allowing a borrower to seek reimbursement of such money or property through rescission, even after the loan has been satisfied, is consistent with the statutory language. *See McIntosh*, 215 F.R.D. at 31.

Finally, allowing borrowers to rescind even after the loan has been paid is consistent with and furthers the purposes of the CCCDA. The parties agree that one purpose of the rescission provision is to protect borrowers from foreclosure of their homes. *See* Def.'s Mem. at 8–9; Pl.'s Mem. at 8. First Horizon contends that this purpose is eliminated when the lender no longer has a security interest in the borrower's home, as is the case when the loan has been paid in full. *See* Def.'s Mem. at 9. However, protection from foreclosure is not the only purpose of Mass.

**14.** First Horizon argues that *McIntosh* is distinguishable from this case because the borrowers in that case were seeking actual damages under TILA § 1640 in addition to a right to rescind pursuant to § 1635. *See* Def.'s Mem. at 5–6. However, the *McIntosh* court's determination that the right to rescind did not expire upon payoff of the loan was not limited to situations where the plaintiffs have asserted a claim for damages under § 1640. The court's decision was based on two reasons. The first was that "the implementing regulations of TILA never state that paying off a loan in full cuts off unexpired rescission rights." *McIntosh*, 215 F.R.D. at 31. The second reason was that unlike some of the cases in which the courts have found that the right to rescind expires upon payoff of the loan, the plaintiffs had not been fully reimbursed for prepayment penalties and interest charges that they had incurred. *See id.* The *McIntosh* court concluded that a claim for rescission remained a permissible means of attempting to recover these costs even though the plaintiffs had paid off their loan. *Id.* Thus, the plaintiffs' right to rescind following payoff of the loan was in no way dependent upon a claim for damages pursuant to 15 U.S.C. § 1640. Here, the plaintiffs are seeking reimbursement of interest and finance charges through rescission. *See* Pl.'s Mem. at 5; Def.'s Mem. at 6. Under *McIntosh*, this is permissible whether or not the subject loans have been paid off.

Gen. Laws ch. 140D, § 10. Another goal is to ensure that consumers receive certain information so that they are able to make informed choices regarding the use of credit.

"Both TILA and CCCDA were enacted to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit . . . ." *Fidler*, 226 B.R. at 736 (quotations and citations omitted). In order to achieve this purpose, the statutes "require[ ] disclosure of certain terms and conditions of credit before consummation of a consumer credit transaction." *Alicea v. Citifinancial Servs., Inc.*, 210 F.Supp.2d 4, 6 (D.Mass.2002) (quoting *Szumny v. Am. Gen. Fin., Inc.*, 246 F.3d 1065, 1070 (7th Cir.2001)). Thus, both TILA and the CCCDA "require[ ] creditors to provide borrowers with clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights." *Id.* (quoting *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412, 118 S.Ct. 1408, 1410, 140 L.Ed.2d 566 (1998)). *See also* Mass. Gen. Laws ch. 140D, § 10 ("The creditor shall clearly and conspicuously disclose . . . to any obligor in a transaction subject to this section the rights of the obligor under this section."); 15 U.S.C. § 1635(a) (same). Borrowers who have been denied the requisite disclosures may rescind their loans and recover any money or property given to the creditor. *See* 15 U.S.C. § 1635(b) and (f); Mass. Gen. Laws ch. 140D, § 10(b) and (f).

The CCCDA "is quite clearly a consumer protection statute. As such it is to be liberally construed to effectuate its remedial purpose." *Shepard*, 366 Mass. at 191, 316 N.E.2d at 603. This court finds that where, as alleged in this case, a lender has not provided adequate disclosures,[15] allowing the customer to rescind the loan even after it has been satisfied is consistent with the statute's goal of providing consumers with clear and conspicuous disclosures and with the remedial purpose of enabling customers who have not received such disclosures to seek reimbursement of money and property given to the creditor.

### III. *CONCLUSION*

For the reasons detailed above, First Horizon's motion for clarification is allowed to the extent that clarification is requested but otherwise DENIED.[16] This court hereby clarifies and amends its November 10, 2005 R & R to recommend that the following class be certified:

---

**15.** Nothing herein or in the original R & R addresses the merits of the plaintiffs' claims.

**16.** The parties are hereby advised that under the provisions of Fed.R.Civ.P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review. *See Keating v. Sec'y of Health & Human Servs.*, 848 F.2d 271, 275 (1st Cir.1988); *United States v. Valencia–Copete*, 792 F.2d 4, 6 (1st Cir.1986); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604–605 (1st Cir.1980); *United States v. Vega*, 678 F.2d 376, 378–79 (1st Cir.1982); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir.1983); *see also Thomas v. Arn*, 474 U.S. 140, 153–54, 106 S.Ct. 466, 474, 88 L.Ed.2d 435 (1985). *Accord Phinney v. Wentworth Douglas Hosp.*, 199 F.3d 1, 3–4 (1st Cir.1999); *Henley Drilling Co. v. McGee*, 36 F.3d 143, 150–51 (1st Cir.1994); *Santiago v. Canon U.S.A., Inc.*, 138 F.3d 1, 4 (1st Cir. 1998).

All natural persons who obtained non-purchase money loans from First Horizon Home Loan Corporation on or after April 1, 2003 and who received a Notice of Right to Cancel in the form represented by Exhibit D to the Amended Complaint where: (1) the loans were secured by the borrower's Massachusetts residence; (2) the loan was for purposes other than the initial construction or acquisition of the residence; and (3) all or part of the loan proceeds were used to refinance a loan made by someone other than First Horizon Home Loan Corporation, which prior loan was secured by an interest in the Massachusetts residence.

The class shall not include any person whose legal right to rescind has been extinguished for any reason, including by written waiver of the right to rescind, the sale or transfer of all ownership interests in the property that served as security for the loan transaction, or by foreclosure, personal bankruptcy, or other loan workout settlement. *However, no person shall be excluded from the class simply because that person has refinanced or paid off the subject loan.*

The declaratory judgment sought shall be a "declaration that any class member who so desires may seek to rescind their transaction."

January 6, 2006.